. THE FIRST NATIONAL BANK OF NEPHI, AP-
PELLANT *v.* WALTER I. BROWN AND MARY E.
BROWN, RESPONDENTS.

CROSS-COMPLAINT—COUNTER CLAIM—SUFFICIENCY OF EVIDENCE—
NON SUIT—PROMISSORY NOTE—DELIVERY—SUFFICIENCY OF—
REAL BENEFICIARY—PROCEEDS OF NOTE—COUNTER CLAIM—
AUTHORITY OF BANK CASHIER—WHEN BANK ESTOPPED FROM
DENYING—BOOKS OF BANK—AS EVIDENCE—WHEN IMMATERIAL
—ASSIGNMENTS OF ERROR—NOT STATED IN BRIEF—NOT CONSID-
ERED BY APPELLATE COURT—RULE 10 SUPREME COURT.

*Cross-Complaint — Counter Claim — Sufficiency of Evidence — Non-
Suit.*

Where facts alleged in a cross-complaint, if true, constitute a
valid counter claim and the evidence adduced thereon fairly
tends to prove the material allegations, a non-suit on the
counter claim is properly denied, as also an instruction to
find for the plaintiff the full amount prayed for in the com-
plaint.

*Promissory Note—Delivery—Sufficiency of—Real Beneficiary—Pro-
ceeds of Note—Counter Claim.*

Where the defendant had on deposit to his credit in plaintiff's
bank one thousand dollars, and at the request of the cashier,
and as an accommodation to the bank, consented that the
same might be loaned through the bank to another of its cus-
tomers, on the condition that the bank would guarantee the
loan, collect the same for defendant, and upon such consent
being given the defendant was debited in his account with
the bank, with said sum, and afterwards the cashier made an
arrangement with two other customers, by which, upon pay-
ment by them of a portion of a previous loan, a re-loan or a
continuation of a loan of the unpaid portion of the previous
loan was granted by said cashier, and a note for such balance,
in the sum of one thousand dollars was given by said custom-
ers, payable to the bank, that upon the execution of said

note the cashier represented to the defendant that he had made the loan consented to by the defendant, had taken said note for the same, and at the suggestion of the cashier the same was left by the defendant with other notes of his in the bank for collection, and the cashier gave the defendant a receipt for said note in which it was recited that the same was held for collection and credit of the defendant; that afterwards several instalments of interest on said note were paid to the bank and credited to defendant in his account with the bank; that the bank afterwards collected the said note and refused to credit the defendant with the amount collected.

*Held*, that the defendant under the circumstances of the case was the real beneficiary of said note and that the receipt therefor was a delivery and transfer by delivery for a good and valid consideration, to the defendant, of said note, and passed to him the title to the same, and that the proceeds of the same collected by the bank constitutes a valid counter claim against the demand of the plaintiff.

*Authority of Bank Cashier—When Bank Estopped from Denying.*

As the thousand dollars of the defendant's deposit with which he was debited in the books of the bank, was never credited back to him but was retained by the bank, and credit therefor to the defendant is still refused by the plaintiff, it is estopped from disputing the authority of its cashier in the transaction.

*Books of Bank—As Evidence—When Immaterial.*

The books of the bank, offered for the purpose of showing, that at the date of the loan, the bank parted with a larger note for part cash and the new note for the balance as a renewal of a portion of a previous loan, were properly excluded as immaterial.

*Assignments of Error — Not Stated in Brief — Not Considered by Appellate Court—Rule 10 Supreme Court.*

Assignments of error, not stated in the brief of counsel, together with the points and authorities and facts necessary for consideration and determination of the points relied on, as required by Rule 10 of this court, will not be considered by the court.

(Decided June 20, 1899.)

Appeal from the 5th District Court, Juab County, Hon. E. V. Higgins, *Judge.*

Action on a promissory note executed and delivered to the plaintiff by the defendants. Defendants answered and cross-complained, setting forth that defendant Walter I. Brown had a deposit in plaintiff's bank on the 7th of April, 1891, and that on said date said sum was loaned by the bank through its cashier upon the authority of defendant Walter I. Brown, the bank guaranteeing the loan, and claiming that said loan had never been repaid to defendants. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Messrs. Brown & Henderson* for appellants.

Among the rulings to which we call particular attention as being erroneous is that which refused to admit certain books of the bank in evidence. Brown was a stockholder and director, and in discussing this matter with the officers of the bank afterwards he and the president opened a book at the bank and examined it and had a conversation with regard to it. The entries thus found in the book were a part of that conversation and were admissible as a part of it, if for no other reason. But the court excluded them. This was clearly a mistake. The entries were shown to be books of original entry kept in the ordinary way of business and for that they were admissible. 1st Greenleaf, Sec. 115; 1st Wharton, Sec. 682; *Bunker* v. *Shed*, 8 Metcalf, 150; *Plummer* v. *S. E. M. Co.*, 47 Pac. 294; *Redlich* v. *Bannerlee*, 98 Ills. 134.

*Messrs. Pierce, Critchlow & Barrette,* for respondent.

The bank's cashier arranged to loan money, take a note

and rediscount the paper, guaranteeing it. That this is a part of a bank's ordinary business, see *People's National Bank* v. *Nat. Bank*, 101 U. S., 181; *Barnes* v. *Bank*, 19 N. Y., 152; *Ballston Bank* v. *Marine Bank*, 16 Wis., 125, and cases cited.

Upon the clearest principles of agency, the bank is bound by the act of Hague, done for it and in its name. *U. S.* v. *Bank*, 96 U. S., 33; *Union G. M. Co.* v. *R. M. Bank*, 96 U. S., 644; *Union National Bank* v. *Matthews*, 98 U. S., 621; *Bank* v. *Whiting*, 103 U. S., 99; Mechem Agency, Sec. 514.

It is suggested that this arrangement was one by which Hague undertook, individually, to loan Brown's money. There is no warrant for this, as all his acts purported to be in a representative capacity.

But it is said that the bank could not do this; and therefore Hague could not do it for the bank, hence he did it individually.

The answer is two fold. Whether or not they had the power to do it, the bank, not Hague, did it; and again, even if it had not the power, even though in was an *ultra vires* act, it must accept the consequences, since it accepted the benefits of the transaction. *Bank* v. *Bank*, 4 Am. Rep., 80.

A bank may not do many things. Having done them (and it can act only through agents), the consequences follow, as though the act was authorized. *Ultra vires* is no excuse. *First National Bank* v. *Graham*, 100 U. S., 699; *Union National Bank* v. *Matthews*, 98 U. S., 621.

The collection of commercial paper is part of the regular business of a National Bank. *Paint Co.* v. *Nat. Bank*, 4 Utah, 353; *First Nat. Bank* v. *Graham, supra.*

The other error assigned is as to the exclusion of books of account of the bank.

They are not sworn to as being correct. It was notorious on the trial that the cashier who kept the books had robbed the bank. The books were false. The cashier is in the penitentiary on that very account.

By all rules the books must be shown to be correctly kept. Hague might have been brought to tell what he knew of them. But they were not competent under the most liberal rules.

See generally, on the subject of admissibility of books of a corporation against a stockholder. *Rudd* v. *Robinson,* 126 N. Y., 113, and cases cited. S. C., 12 L. R. A., 473.

The true rule on the subject is laid down in (C. C. A.) *Am. Surety Co.* v. *Pauly,* 72 Fed. Rep. 478, affirmed in 170 U. S., 133.

Baskin, J.

This is an action on a promissory note executed and delivered to the plaintiff by the defendants.

The answer admits the execution and delivery of the note and by way of cross-complaint, in substance alleges that on the 7th of April, 1891, the defendant Walter I. Brown had on deposit in the plaintiff's bank one thousand dollars; that on said day the plaintiff requested the said Walter I. Brown for permission to loan the same to one W. J. Seely, and others, and as a reason for such request stated that the said Seely and others were customers of the plaintiff's bank, and that plaintiff did not have the money to loan to said parties; that the cashier of the plaintiff's bank said that the plaintiff would take and hold the note of said Seely and others, for one thousand dollars and collect the same with interest thereon, for the use and benefit of the said defendant, and would be responsible to said defendant therefor; that relying on said statements

said defendant granted said request; that afterwards the plaintiff charged the defendant's account in said bank with one thousand dollars, and represented to the defendant that the same had been loaned to the said Seely and others upon their note, and that plaintiff was holding said note to be collected and applied in pursuance of the aforesaid grant of permission by said defendant to loan said sum; that afterwards, from time to time, plaintiff credited said defendant's account in said bank with interest which plaintiff represented had accrued and been collected on said note, from the date thereof and up to October 13, 1893; that the said defendant on the 13th day of February, 1894, for the first time learned that the plaintiff held no note of the said Seely and others, but that on the said 7th day of April, 1891, the plaintiff had loaned to the said Seely and others, one thousand dollars, and had taken their note therefor payable to itself, which note prior to February, 1894, had been paid to plaintiff; that no part of the proceeds of said note, except the interest thereon, credited as heretofore stated, has been paid or credited to the said defendant in his account with the plaintiff bank, and that the plaintiff refuses to pay said defendant or credit him, in said account, with any portion of the balance of the proceeds of said note, or with any amount on account of said transaction, although the said defendant has frequently requested the plaintiff so to do.

At the trial of the case, which was by jury, upon the close of the defendant's testimony in chief, the plaintiff moved for a non-suit, on the counter-claim, which being refused, after all the testimony was in plaintiff's counsel requested the court to charge the jury as follows: "It is your duty, under the evidence in this case, to find for the plaintiff in the sum of $1,070.00, with interest thereon at the rate of 8 per cent. per annum, from December 14, 1894,

until the present time, together with $100.00 as attorney's fees."

The court refused to so charge the jury, and plaintiff excepted. This refusal is assigned as error.

The facts alleged in the cross-complaint, if true, constitute a valid counter claim in favor of the defendant Walter I Brown. If, therefore, the evidence adduced on behalf of the defendant, fairly tended to prove the material allegations of the cross-complaint, essential to the establishment of the counter claim, then the refusal to grant a non-suit and to instruct the jury as requested was not error. It is only when there is no evidence on some material point, proof of which is necessary before a recovery can be had, or when there is no evidence upon any material issue, or when the evidence is so slight or indefinite that a verdict based upon it would be set aside on motion for a new trial, that either the granting of a non-suit, or the giving of such an instruction as that asked for by plaintiff's counsel, is permissible. The credibility of the witnesses and the weight of the evidence, when conflicting testimony is adduced, on the material issues between the parties, are matters which the jury alone have a right to decide. The following, is the substance of the evidence adduced in chief by the defendant, to-wit: That Alma Hague from the organization of plaintiff's bank in 1886, was the cashier of said bank until February 1894; that long prior and during the year 1891, and up to and including the year 1894, the defendant Walter I. Brown, was a customer of said bank, and on the 7th day of April, 1891, had on deposit therein, to his credit, the sum of one thousand dollars; that on said day Alma Hague stated to said defendant that the Seelys had called to borrow a thousand dollars from the bank; that the bank was short and could not let them have the

money, and asked said defendant if he did not want to loan some of the money which he had on deposit in said bank, and stated that if defendant would let them, the Seelys, have the money, the loan would be made through the bank, and for the accommodation the bank would guarantee the same, and see it was collected and credit it back to defendant's account, and the defendant would have no trouble about it at all; that the Seelys were good customers of the bank, and that the bank did not want to lose them, and that the defendant would get eighteen per cent. interest (per annum); that upon these conditions the said defendant consented that the loan might be made; that thereupon the said defendant was debited, in his account with said bank, with the sum of one thousand dollars; that a few days afterwards the said Alma Hague informed the defendant that he had made the loan to the Seelys, and asked the defendant whether he would take the note or leave it for collection with the rest of the notes of defendant, which the bank had in its possession for collection; that the said note was left with the bank, and, according to defendant's best recollection, a receipt was given to him for the same, which was afterwards returned to the bank and another receipt taken therefor, which was also returned to the bank and another receipt given for said note and a number of others which had been placed in said bank for collection by the defendant; that said receipt, which was put in evidence was signed by Alma Hague, cashier. The body of the receipt was in said cashier's handwriting, and after a description of the numerous notes therein contained, and over the signature of said cashier the following words occur: "Received of W. I. Brown for collection and credit to his account." That the said defendant had no connection whatever with any other note or obligation of the Seelys, except the note

which the cashier of said bank represented had been given for said loan and was included in said receipt; that the reasons assigned for giving these various receipts were, that from time to time, after April 7, 1891, the defendant placed in said bank, for collection, other notes than those already there for that purpose, and upon doing so would deliver up the former receipt and take a new one for all the notes, including those already in the bank, and those which were added; that the interest was paid on said note up to the 13th day of October, 1893; that the first three months' interest was credited to the defendant, in his account with the bank, at other times it was credited to the defendant as deposits; that on or about the 7th day of April, 1891, J. W. Seely and his brother John H. Seely executed a note for one thousand dollars, payable to the plaintiff, under the following circumstances: J. W. Seely and J. C. Reynolds, his brother-in-law, had previously borrowed $2,099.80 from the plaintiff bank, for which they gave their note, with John W. Seely as indorser; that the plaintiff on or about April 3, 1891, notified the makers that it would require payment of said note at its maturity on the 10th of that month; that J. W. Seely for the purpose of raising money to pay said note at maturity, applied to the Wool Growers' Association for a loan; that the association refused to loan the amount required, but offered to make a loan of $1,100, if the bank would consent to take another note from the obligors of the one about to fall due, for the balance ($1,000); that the proposition having been made to Alma Hague, cashier, at a meeting of the Wool Growers' Association, he replied, in substance, that there were parties who then had money in the bank, and if he could get this money he would consent to take the note for $1,000; that afterwards J. W. Seely went to the bank, and the cashier accepted the proposition,

and the said J. W. Seely and his brother executed their note in accordance therewith; that thereupon said association delivered to the bank its check for $1,100; that the Seely note for $1,000 was afterwards paid to the plaintiff, and that said defendant has not been credited with any part of the same, except the interest collected on said note, credited to him as before stated.

This evidence is not contradicted in any substantial particular by the testimony introduced by the plaintiff, in rebuttal. There was also evidence tending to show that the president acknowledged the liability of the bank.

Plaintiff's counsel claim that the counter-claim should have been withheld from the jury, on the ground that the evidence shows that no money belonging to said defendant was loaned to the Seelys, and that the note executed by them was given in renewal of a portion of a sum owing by them on another note for $2,099.80; that Hague acted without authority and that his acts and declarations in the premises do not bind the bank.

It appears from the evidence that at the time the cashier made the request of the defendant to loan through the bank the one thousand dollars on deposit, that the bank was short of funds (it afterwards failed), that notice had been given to the makers of the note for $2,099.80, that payment of the same at its maturity would be required; that at the time the request by the cashier was made J. W. Seely, one of the makers, had applied to the Wool-growers Association for a loan to meet said note at its maturity, and the proposition by said association had been made in the presence of said cashier, who at the time stated he would consent to the proposed arrangement if he could get certain money which other parties had on deposit in the bank. While the evidence is not explicit upon the point, the attending circumstances, strongly

tend to show that the money so referred to by the cashier was the thousand dollars which the defendant had in the bank, and that said cashier did not consent to the proposed arrangement until the defendant gave him permission to loan the same to the Seelys upon the conditions before mentioned.

It is evident that the cashier's main purpose in the transaction was to benefit the bank by obtaining the whole sum about to fall due on the note for $2,099.80. This purpose was fully accomplished in the transaction. By the debiting of the defendant with one thousand dollars in his account with the bank, and the reception of eleven hundred dollars from the Wool Growers Association, the cash of the bank was increased twenty-one hundred dollars, for it does not appear that the deposit of the defendant was ever touched in the transaction or drawn out by the cashier. All that the evidence shows in regard to this is that the defendant was debited with the amount, and the note of the Seelys was placed in the bank for collection, with the understanding that its proceeds should be credited to defendant, and a receipt was given to that effect.

The consideration for the Seely note, received by the makers thereof, was the renewal of a portion of a loan previously made to them and another by the bank, and while the note in terms was payable to the bank, the said defendant was, in fact, the real beneficiary. The note was evidently procured by the cashier, who was the representative of the bank in the transaction, with that object in view. Therefore, upon the payment of the note, the plaintiff was not entitled to appropriate to its use any of the proceeds, because it had already received, as a consideration for said transaction the full amount, in cash, of the original loan to the Seelys and Reynolds. Under

these circumstances the giving of the receipt, by the cashier, to the defendant, for the Seely note, immediately after the execution of said note, and at the time of the statement by him to the defendant that he had made the loan to the Seelys, in pursuance of the previous consent of the defendant, and at the same time, that, at the suggestion of the cashier, the defendant gave his consent to leave said note for collection in the bank with other notes of said defendant which had previously been placed in the bank for collection, was a delivery and a transfer by delivery based upon a good and sufficient consideration therefor, to the said defendant.

By the transaction disclosed by the evidence, the said defendant became the owner and holder of said note. The fact that afterwards the plaintiff collected interest on said note and crdited the defendant with the same, in his account with the bank, conclusively shows that the plaintiff knew that the said defendant was the owner of the same, and that the plaintiff was not entitled to any of the proceeds of said note, but that it was held by the bank merely for collection.

If the allegation that a loan was made to the Seelys was stricken from the complaint, there would still remain allegations sufficient to sustain the counter-claim. The plaintiff was not in any way injured by the transaction; on the contrary it had placed to its credit, in its account with the defendant, the one thousand dollars which the defendant had on deposit in the bank. It cannot legally or in good conscience be permitted to retain the consideration which it received and repudiate the transaction.

If it were conceded that the cashier had no authority to loan through the bank, the defendant's deposit money, by the retention of the same, in the bank, without crediting it back to said defendant in his account, was a ratification

by the bank of the transaction, and the bank should not be allowed while retaining this money, to question the authority of its cashier.

We are clearly of the opinion that no error was committed in overruling the motion for a non-suit, or by the refusal to instruct the jury as requested by the plaintiff.

The plaintiff also assigns as error the refusal of the trial court to admit in evidence the book of the bank, which as appears from the record was offered for the purpose of showing that, on the day the Seely note was executed, the bank received no cash except the amount from the Wool Growers Association, and that it parted with the Seely and Reynolds note for $2,099.80, and took a new note,—the one for one thousand dollars, and that the bank secured no benefit whatever, but that this note was simply a renewal of a part of the one the plaintiff parted with in the transaction.

It is not disputed, but is an admitted fact in the case, that the deposit of one thousand dollars of defendant in the bank, was debited to the defendant in his account with the bank, and has not been credited back to the defendant. In the light of this fact and from the views which we have already expressed, the purpose for which said offer was made was not material, and therefore the refusal of the court to admit the books was not error.

This disposes of all of the objections presented by and discussed in the brief of plaintiff's counsel. Thirty-three other assignments of error are made in the record, upon which plaintiff's counsel state in their brief they rely, but as they have not, as required by Rule 10 of this court, stated any of these other errors in their brief, together with the points and authorities, the facts necessary for the consideration and determination of the points relied upon for a reversal, we have not considered any of the assignments of error except the ones already disposed of.

It is ordered and adjudged that the judgment of the court below be affirmed, with costs.

BARTCH, C. J., and MINER, J., concur.