# AIKEN et ux. v. LESS TAYLOR MOTOR CO.

No. 6914.   Decided July 22, 1946.   (171 P. 2d 676.)

See 35 C. J., Landlord and Tenant, sec. 198; 32 Am. Jur. 820; Failure of lessee to give notice as exercise of option to renew lease; note, 26 A. L. R. 1416.

*White, Wright & Arnovitz,* of Salt Lake City, for appellants.

*Lee Neff Taylor* and *Shirley P. Jones,* both of Salt Lake City, for respondent.

WOLFE, Justice.

Plaintiffs below appeal the decision of the Third District Court in their unlawful detainer suit against the defendant motor company.

This case involves the interpretation of a written lease and the determination of whether or not the option to renew included therein was exercised by the Lessee. The lease was entered into by one of the appellants as lessor and respondent as lessee on the 25th of September, 1941. The parts of the lease pertinent to this case read as follows:

"Harold W. Aiken  *  *  *,  the lessor hereby remise, release and let to Less Taylor Motor Co., Inc.  *  *  *,  the lessee, all those premises [describing property involved].

"To have and to hold the said premises, together with the appurtenances, unto the said lessee  *  *  *,  from the 1st day of October, A. D. 1941, for and during and until the 30th day of September, A. D. 1943, a term of Two Years, with option of renewal by Lessee, at expiration, for a period of four (4) years.

"And the said lessee covenants and agrees to pay said lessor  *  *  * as rental for said premises, the sum of Thirty-nine Hundred Sixty & no/100 Dollars, payable in sums of One Hundred Sixty-Five & No/100 Dollars per month, monthly in advance, on the 1st day of each and every month during said term. Three Hundred Thirty & No/100 ($330), representing first and last months rent, the receipt of which is hereby acknowledged.

*  *  *  *  *  *

"Lessee hereby agrees to give Lessor Sixty (60) day notice before expiration of Lease, if not renewed  *  *  *."

The lease did not provide for notice to be given lessor or for any other act to be done by lessee to effect the renewal. It provided for 60 day notice "if not renewed." Notice of a negative was provided for—a somewhat odd provision.

In addition to the fact that the property was leased by the above partially quoted lease, the following facts are not disputed by the parties. Defendant entered into possession of the property on October 1, 1941 and is still in possession. All rents reserved under the lease have been paid in full or tendered. No rent was paid during September, 1943 (the last month of the two year term). No notice was given lessor by lessee at any time before the end of the two year period that lessee did not intend to renew. On October 5, 1943 (five days after expiration of the two year term) lessor sent a letter to lessee asking if it desired to lease the

property for the following year. Lessee made no reply to that letter. On February 23, 1945, some 17 months after the original two year term had expired, lessor advised defendant that after March 1, 1945, the rent would be at a rate of $185 per month instead of $165. Lessee refused to pay the increased amount. After giving lessee the statutory notice to vacate lessor brought this suit in unlawful detainer.

In dispute is lessor's claim that on or about October 20, 1943, some three weeks after expiration of the original two year term, lessee orally indicated to lessor that it did not wish to exercise the option to renew and they thereupon orally agreed that tenancy under the written lease was terminated and the tenancy was to continue on a month to month basis.

The trial court on its findings of fact that lessee did not comply with the clause of the lease requiring that notice be given to lessor 60 days before the expiration of the two year term that it did not intend to renew and that lessee held over after the expiration of the original term, concluded that the lessee had exercised its option to renew and was occupying the premises under the renewed lease. The lower court entered judgment of no cause of action for unlawful detainer.

Rule VIII of the Rules of Practice of this court, effective March 1, 1941, reads in part as follows:

"Appellant's brief shall contain:

\* \* \* \* \* \*

"2. A statement of the errors upon which he relies for a reversal of the judgment or order of the court below."

The rules of this court do not now require a separate service and filing of a separate assignment of errors but require the statement of the errors to be made and included in the appeal brief. The change in the rules did not in any way obviate the necessity for the appellant ■ to point out to the court and to the adverse party the errors on which he relies for a reversal of the judgment or order. In reference to the necessity for the assignment

or statement of errors the rule of this court is the same now as before the adoption of the rule requiring its inclusion in the briefs. See *Sandall* v. *Sandall,* 57 Utah 150, 193 P. 1093, 15 A. L. R. 620; *Brown* v. *Merriott,* 97 Utah 65, 89 P. 2d 478; 3 Am. Jur. 287; *Dalton* v. *Stout,* 87 Utah 39, 48 P. 2d 425.

The assignment of error should not be a mere repetitious itemization of practically all the acts and rulings of the trial court which are set out by counsel with the hope that one or more will be found to be reversible error. Rather the assignment of error should clearly and concisely ■ inform the court and the adverse party of the errors relied on for reversal so that the court and the adverse party may know what questions are to be raised in the appeal. Some counsel make mass assignments of error (more than 180 in some cases) when only ten or fifteen would be sufficient to raise all the real issues involved. Such mass assignments are not helpful as they bury rather than indicate and define the issues of the appeal. Errors must be assigned but care and effort should be taken to make those assignments so that they will effectively serve the purpose for which they are required.

We have searched appellants' brief in vain for their statement of errors set out and labelled as such. Only a most liberal application of the rule and our desire to give the appellants the benefit of a review prevents this appeal from being dismissed for the reason that their brief does not contain a statement of the errors upon which they rely for reversal.

We shall assume from various statements in their brief that appellants assign as error the lower court's conclusion that the failure of the lessee to give notice that he did not intend to renew plus lessee's continuing in possession and paying rent after the two year term exercised the option to renew the lease.

It is elementary that an option to renew contained in a lease must be exercised to effect the renewal. Usually affirmative acts are required either by the express terms of

the lease or by implication of law to exercise the option to renew. Such acts as the making of improvements, the giving of notice of renewal or intent to renew, or the making of a new lease are ofttimes provided for by the terms of the lease as the way the option is to be exercised. The holding over and the payment of rent after completion of the first term in some cases exercises the option to renew. Though the ordinary case requires affirmative acts to exercise the option to renew, the parties to a lease may specify any method they choose as the way the option is to be exercised. In the case at bar the lessee and lessor by an express clause of the lease specified that lessee was to give lessor notice 60 days before the expiration of the two year term if the lease was *not* renewed. We opine the parties intended that if no notice were given 60 days before the end of the two year period, the option to renew was thereby exercised and the lease was thus renewed.

Appellants contend the failure of lessee to give notice 60 days before expiration of the two year term did not renew the lease because the phrase "at expiration" in the lease clause reading "a term of two years, with option of renewal by lessee, at expiration, for a period of four years" means the option to renew could not be exercised until the expiration of the two year term. We do not agree with appellants' interpretation. The parties used the words "at expiration" to indicate that if the option to renew were exercised the new term would run from the expiration of the two year term. The option to renew could be exercised by appropriate affirmative acts at any time up to 60 days before the expiration of the two year term, and it was exercised by the lessee's failure to give the agreed notice 60 days before the expiration of said term.

Appellants contend the lease required the rent for the first and last months of the term to be paid at the time the lease was entered into. Further, that if the lease were renewed that the extra month's rent paid at the inception of the term should pay for the month of September, 1947 and not for September, 1943, the month for which it would

have paid if the lease were not renewed. Appellants reason that as lessee did not pay rent during September, 1943 he showed an intent to have the extra month's rent apply to September, 1943. Otherwise, he would have paid rent during September, 1943 and would have allowed the month's rent paid in advance to pay for September, 1947. From these contentions, appellants argue that the lessee by not paying rent during September, 1943 showed that he intended not to renew the lease for the additional term.

The pertinent parts of the lease clause dealing with rent read:

"* * * lessee covenants * * * to pay to said lessor * * * as rental for said premises, the sum of Thirty-nine Hundred Sixty & No/100 Dollars, payable in sums of One Hundred Sixty-five & No/100 Dollars per month, monthly in advance, on the 1st day of each and every month during said term. *Three Hundred Thirty & No/100 ($330) Dollars, representing first and last months rent, the receipt of which is hereby acknowledged.*" (Italics added.)

That clause sets the rental of the property at $3,960 for two years to be paid at the rate of $165 per month on the first day of each month. The sentence in italics is a receipt for $330 and a record of the two months' rent it was to pay.

As we have decided that the option to renew was exercised by the lessee refraining from giving notice 60 days before the end of the two year term the nonpayment of ▪ rent during September, 1943 had no effect on the renewal as the option to renew was exercised before September, 1943. By implication of law the rent for the renewal period is at the same rate as for the original term.

The case of *Chretien* v. *Doney*, 1 N. Y. 419, which was decided by the New York Court of Appeals almost one hundred years ago, involved a lease containing terms comparable with those in the case at bar. The lease in that case provided:

"The said Doney to have the privilege to have the premises for one year, one month and twenty days longer; but if he leaves he is to give four months' notice before the expiration of this lease."

The New York court held in part:

"The lease from Chretien to Doney was a lease for one year, or for two years, one month and twenty days, at the option of Doney. Doney's election to give up the premises at the end of the first year, was to be signified by a notice of at least four months before the expiration of that year. If he failed to give that notice, the contract became a lease for the longer time. No new writing or agreement was contemplated between the parties. Although the amount of rent and the time or times of payment for the extended term, are not expressed, that omission is supplied by construction of law. The right to hold during the extended term is given to Doney in plain and express language, in the lease; and the legal inference is that he should pay rent at the same rate as for the shorter term, and at corresponding times. * * *"

The Chretien case apparently has never been overruled in New York but continues to be cited with approval. *Fritz v. City of New York*, 125 Misc. 296, 210 N. Y. S. 717. However, the New York legislature in 1934 provided by statute that automatic renewal clauses in leases of real property are inoperative unless the lessor, at least fifteen days and not more than thirty days previous to the time specified for notice to him, shall by written notice call the attention of the tenant to the existence of the automatic renewal provision in his lease. New York Real Property Law, Section 230, 49 McKinney's Consolidated Laws of New York Annotated 554. That statute is an implied recognition that parties to leases may put automatic renewal clauses in their lease if they so desire. To protect lessees from inadvertently failing to give notice of intention not to renew and thus being held for the new term the statute makes the automatic renewal clause inoperative unless the lessor timely calls the attention of the lessee to that lease clause.

We have no statute in reference to automatic renewal clauses comparable to that of New York. If parties to a lease desire to include therein an automatic renewal clause, it is not for us to make that clause ineffectual.

We hold that by the lessee's refraining from giving notice 60 days before the end of the two year term that it did not intend to take the additional four year term it exercised its

option to renew and the four year additional term began upon the expiration of the original two year term.

Having decided that the lease was renewed by the failure to give notice, it is unnecessary for us to decide the effect of lessee's holding over and paying rent after the expiration of the two year term.

Appellants lay stress on the fact that a letter was sent by them to lessee some five days after the expiration of the two year term asking lessee if it wished to renew and that lessee did not answer said letter. As we have determined that the lease was renewed before that letter ■ was written it is apparent the letter and the lessee's failure to reply to it had no affect one way or the other on the renewal of the lease. A mere failure to answer could not be considered a renunciation of an already exercised option to renew.

Appellants contend that the failure of the lessee to give the required notice at most merely raised a rebuttable presumption of renewal. It is true that if the parties prior to 60 days before the expiration of the two year term had entered into a new agreement so that the terms of the written lease were changed to make the 60 day notice clause inoperative then lessee's failure to give notice would not have been an exercise of his option to renew. However, absent a showing of such a material change of the original lease the failure to give the notice exercised the option.

This brings us to appellants' contention that on or about the 20th of October, 1943, some three weeks after expiration of the two year term, respondent orally indicated to appellants that it did not wish to exercise its option to renew and thereupon they orally agreed the lease should terminate and the tenancy should continue on a month to month basis. As we have determined that the option to renew was exercised prior to that purported new tenancy arrangement, that new agreement, had it been made, could not have prevented the renewal of the lease. However, though the lease was renewed that would not prevent the parties three weeks after the new term started or at any

time—even after this decision is handed down—from agreeing to terminate the renewed lease and from providing for a continued tenancy upon different terms. If such a termination was made in October, 1943 and a month to month tenancy substituted as appellants contend, the fact of renewal of the original lease would be no defense to this unlawful detainer suit.

Whether or not such a new agreement was made we do not know. Lessor contends it was. Lessee denies making any new tenancy agreement. The trial court made no finding of fact specifically on the question. The court determined that the lessee was in possession under the ▮ lease as renewed. From that determination it may be inferred that the court did not agree with the lessor that a new agreement was made or if made that it affected the renewed lease. Lessor made no assignments of error on the failure of the court to make findings on the question of a new agreement. No errors were assigned on any matters even remotely connected with the question of a new tenancy agreement. We may assume the trial court was correct in deciding inferentially that the alleged new tenancy agreement was not in fact made.

The option to renew was exercised. As far as the record shows the lessee at the time of this suit for unlawful detainer was rightly in possession under that lease as renewed.

The judgment is affirmed. Costs to respondent.

McDONOUGH, PRATT, and WADE, JJ., concur.

LARSON, Chief Justice (concurring specially).

I concur in affirming the judgment, but I limit my concurrence to the following propositions: The first lease was automatically renewed for four years, when notice of intention to terminate was not given 60 days before September 30, 1941. Certainly Aiken could have held Taylor to the lease for four more years. If the lease was renewed so it would bind Taylor it would also bind Aiken. The renewal being established, the only remaining question is, Did Aiken

establish his claim that in October 1943 the parties orally terminated the lease, and substituted a month-to-month tenancy? I agree with Mr. Justice Wolfe, that the findings of the trial court require us to hold that the trial court must have resolved this fact against Aiken. For these reasons I concur. As to all other matters in the prevailing opinion, I express no opinion. I think they are not material to the decision of this case.