321 P.2d 931

Sheila Wherritt GRAZIANO, Plaintiff and Respondent,

v.

Charles Benito GRAZIANO, Defendant and Appellant.

No. 8640.

Supreme Court of Utah.

Feb. 21, 1958.

William J. Christensen, Salt Lake City, for appellant.

188

Ned Warnock, Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant appeals from a divorce decree assailing generally the inequity and injustice of granting a divorce to the plaintiff. He urges that a fair appraisal of the evidence requires (1) denial of a decree to her, (2) granting him a divorce on his counterclaim, and (3) awarding him custody of their two-year-old daughter.

The marriage of this young couple had existed but a few months when obstacles to marital harmony became apparent which the parties finally have found impossible to surmount, stemming largely from the fact that they came from such entirely different home, religious and social backgrounds. The plaintiff was a native of Salt Lake City, having been reared in a comparatively well-to-do family of social standing. She had a college education and had done considerable traveling abroad. She is not affiliated with any organized church and testified that she classified herself as an agnostic. The defendant was reared in Bristol, Connecticut; his parents were Italian immigrants and their pattern of life was quite dissimilar to that of the plaintiff. Although from the record it appears that the defendant was capable and industrious in the various employments he pursued, he has never had the opportunity of a college education. He was a church member and placed considerable importance on religion and especially upon prospective religious training for the infant daughter.

During the comparatively short duration of the marriage, the defendant, for various reasons, changed his employment a number of times: he was ski instructor at the Alta Ski Resort near Salt Lake City; worked for a company making a movie there; worked as a chef in three different restaurants and clubs in Salt Lake City and in a hotel in Aspen, Colorado, where they resided until March, 1956. The parties then moved to Bristol, where the defendant first worked for a short time for his brother-in-law in a collection business and was later employed by the International Harvester Company.

In Connecticut the parties lived in the home of defendant's mother, which proved to be a very unhappy situation for the plaintiff. She felt that she did not have much in common with other members of the household nor with other people in the area, who were mostly Italian or Polish. Other factors producing discord were his frequent change of employment and the fact that he bought a sports car, plunging into debt before providing themselves with a home. On occasions she indicated a desire for a divorce but each time he talked her out of it, particularly urging that it would not be for the best interests of their child. The tribulations of these parties, which seem to a considerable extent to

result from subjective feelings, and viewed objectively, may appear to be of no great consequence to others, were nevertheless sufficiently real to them that the marriage was no longer endurable for the plaintiff.

On July 17, 1956, while the defendant was at work, she took the child and her belongings and boarded a plane for her home in Salt Lake City, leaving a note to "Dear Charlie" and saying, inter alia " * * * I am sorry to have to run away like this, but neither of us could stand a lifetime * * * don't blame it on anybody but you and me." Further indication of the blighted relationship between the parties, and the finality of plaintiff's decision is reflected in a subsequent letter in which she wrote, "I am very sorry for making a tragedy in your life. You are very good and don't deserve it, but there was no other way * * *. We simply have to make a clean break * * *. I will love, cherish and bring up Gina properly without hardships, * * * I don't intend to ask for any alimony or support money, so I hope you won't have much trouble paying off your debt."

Defendant makes much of these letters as reflecting lack of fault on his part. This is not without some justification. The truth is that they also reflect some magnanimity on the part of the plaintiff. We divine from the record that, as in most cases, neither party is without fault, yet there appears to be much more good in both of them than the other seemed willing to credit. It is quite probable that in this proceeding under our "adversary system," which sometimes in cases of domestic strife lends itself more to inflaming passions than to pacifying them, considerable animus was engendered between the parties, and perhaps their counsel, which tended to magnify and distort the faults each imputed to the other out of true perspective for the purpose of "winning" the case, an objective that neither could accomplish in reality because the real prize: the harmony and happiness that might have been were forever lost.

The marital relationship having deteriorated to the point where each recognized the folly of attempting to continue it, each seeking a divorce in this action, and grounds for divorce having been established, the trial court had no realistic alternative than to grant a divorce.[1]

We remain cognizant of the rule that in divorce proceedings which are in equity, this court will review the facts and weigh the evidence and may substitute its judgment for that of the trial court. But even so, the judgment will not be disturbed unless the evidence clearly pre-

1. Steiger v. Steiger, 4 Utah 2d 273, 293 P.2d 418; Wilson v. Wilson, 5 Utah 2d 79, 296 P.2d 977; Hendricks v. Hendricks, Utah, 257 P.2d 366.

ponderates against the findings.[2] As we appraise the entire picture disclosed by the record, there would be no purpose useful to either party, that could be served by further detailing the claimed faults and shortcomings on either side. Nor do we see any practical good except perhaps moral vindication, that could be accomplished by reversing and ordering the divorce entered for the defendant, were we inclined to do so. Suffice it to say that there is sufficient evidence which, if believed, justified the granting of a divorce to the plaintiff upon the ground of mental cruelty and which, under the rule of review just stated, we do not see fit to disturb.

Termination of the marriage being inevitable, the object to be desired was to fashion a decree which would be just and equitable under the circumstances and, insofar as possible, minimize the animosities which had developed; and to provide the best possible basis for the parties to reconstruct their lives in a happy and useful manner, with primary concern for the welfare of their child. We remain mindful of the propriety of indulging deference to the judgment of the trial court in that regard and of not lightly disturbing it. Yet under the broad powers of review in equity with which this court is endowed,[3] when a divorce decree is under attack, it has always been regarded as an attack upon the whole decree,[4] and when it appears that there is an abuse of discretion so that an inequity or injustice is wrought, the court has proceeded to make such adjustments as it deemed necessary to do justice between the parties and to give effect to the purpose just mentioned above.[5]

There is one thing upon which all concerned are in accord: that a precious asset salvageable from the marriage is the little girl. In the undoubted love and concern they each have for her they have a common interest; and a common objective in seeing that she is provided for, not only with the material necessities, but with a wholesome total environment to the end that she may realize her fullest potential in a happy, well-adjusted and useful life. It is to be appreciated that for these people, with such divergent points of view,

2.  See MacDonald v. MacDonald, 120 Utah 573, 236 P.2d 1066 and authorities therein cited; Steiger v. Steiger, footnote 1, supra.
3.  Utah Constitution, Art. VIII, Sec. 9, and cases footnote 2, supra.
4.  See Porter v. Porter, 109 Utah 444, 166 P.2d 516; Griffiths v. Griffiths, 3 Utah 2d 82, 278 P.2d 983; Alldredge v. Alldredge, 119 Utah 504, 229 P.2d 681, 34 A.L.R.2d 305.

5.  See e. g. Hendricks v. Hendricks, 91 Utah 553, 63 P.2d 277; Dahlberg v. Dahlberg, 77 Utah 157, 292 P. 214; Wilson v. Wilson, 5 Utah 2d 79, 296 P.2d 977; Pinion v. Pinion, 92 Utah 255, 67 P.2d 265 and cases therein cited; Porter v. Porter, 109 Utah 444, 116 P. 2d 516.

and the troubles that have passed between them, the accomplishment of this purpose will present a formidable challenge to maturity of mind and character of both of them. Notwithstanding differences on other matters, it must be agreed that one of the indispensable necessities for the child is that she have a loving and respectful relationship with both of her parents.

We can see no reason for disturbing the trial court's decree in regard to the child. Custody was awarded to her mother, where she of course should be,[6] subject to the reasonable right of visitation by the defendant. It is also discreet and proper that he be required to pay $50 per month for the child's support as provided in the decree, but as to certain other provisions we conclude otherwise.

There is considerable disparity between the economic situations of the parties. The defendant felt impelled to quit his job in Connecticut and come to Utah to defend this action, in spite of the plaintiff's discouraging him from doing so. Under searching examination he could show only $30; he owes and must pay at least a $500 note the parties signed jointly, and he has now been inducted into the army (a fact

acknowledged by both counsel in argument and as printed in plaintiff's own brief),[7] so that for some time, at least during his term in the army, his income will be very limited. It is without dispute that he is presently without other economic resources.

On the other hand, the plaintiff appears to be comfortably situated economically. The record shows that she owns in her own right several thousand dollars worth of various stocks and is also the beneficiary of a trust consisting of substantial investments. Fortunately she has a home with her parents which she and her child may rely on until she is able to readjust her life and care for herself. She appears to be an intelligent, well educated and capable young woman and there is every reason to assume that she will do so without difficulty. Her own opinion of her independence of any need of monetary aid from the defendant is reflected in her letter that she would "bring up Gina properly and without hardships," and that she did not "intend to ask for alimony or support money."

It is undoubtedly true that if the situations of the parties had been reversed and a husband with the financial resources the plaintiff has, had treated his wife in the

---

6. See Steiger v. Steiger, 4 Utah 2d 273; 293 P.2d 418; Cooke v. Cooke, 67 Utah 371, 248 P. 83.

7. As to propriety of considering facts thus admitted, see Stuber v. Stuber, 121

Utah 632, 244 P.2d 650, 652; Sova v. Ries, 226 Wis. 53, 276 N.W. 111; Maley v. Mundy, 47 Tex.Civ.App. 630, 107 S.W. 905.

same manner plaintiff treated the defendant, it would have given rise to censure and in all likelihood would have resulted in the imposition of substantial burdens upon him. No undue burden is placed upon plaintiff here. Nor does there appear to be any justification for visiting any upon the defendant. He stated his desire to support his child to the best of his ability and should do so. The award of $50 per month for that purpose should remain undisturbed; likewise the order that he pay the $500 note. After giving due consideration to the facts proper to be taken into account,[8] including particularly here the degree of default and the disparate economic circumstances of the respective parties, we think that is the extent of the burden that can fairly be placed upon the defendant.

█ As to alimony, without injustice or imposition, the plaintiff can be taken at her word. Certainly no penalty should be visited upon the defendant because he thought enough of his marriage, his child and his duties in that regard to go to the time, trouble and expense of coming out to Utah and defend the action. His earnestness and good faith in doing so cannot be questioned. To place the burdens of alimony and attorney's fees, in addition to those just discussed, upon defendant who is without income except as an inducted G.I.

soldier in favor of the plaintiff who is in so much better economic position and has declared her ability to take care of her own needs, is an abuse of discretion which works an inequity so serious that it should be corrected. The decree should be modified by vacating the award of alimony, and by providing that the parties should each bear their own costs and attorney's fees, both for the proceedings had in the district court and on this appeal. It is otherwise affirmed. No costs awarded.

WADE, J., concurs.

WORTHEN, J., concurs in the result.

McDONOUGH, Chief Justice (concurring and dissenting).

█ I concur, except as to the modification of the judgment by striking the award of alimony and attorney's fees.

The court having found that the trial court did not err in awarding a divorce to the plaintiff—a conclusion with which I agree, although not without some misgivings—I cannot say that the court below abused its discretion in awarding her attorney's fees and a very meager sum as alimony.

HENRIOD, Justice (dissenting in part).

I dissent from the reversal of the rather paltry awards of $25 alimony per month

---

8. For a discussion of the factors see Mac-Donald v. MacDonald, footnote 2, supra; Wilson v. Wilson, footnote 3, supra; Pinion v. Pinion, footnote 3, supra.

for one year and the $250 attorney's fee. This for two reasons: 1) *Nobody appealed therefrom,* and 2) they are not unsupported by the record.

As to 1): *Appellant did not attack the awards mentioned on appeal,* but only the findings incident to the divorce and child custody awards. I invite anyone to point out in this record where appellant specifically attacked the awards which the main opinion now reverses.

Consistency is no jewel here. This court, in Sandall v. Sandall,[1] has said it would not consider errors not specifically pointed out on appeal. Mr. Justice Crockett, author of the present decision, cited the Sandall case approvingly in In re Lavelle's Estate,[2] and, as though to emphasize the rule, added to the requirement of specificity in pointing out the error, the necessity of pinpointing the evidence in the record that allegedly supports the specifically asserted error. He had this to say:

> "An appellant cannot be asked to go through the transcript, showing how the testimony reported on each page does not support the finding. Yet, insofar as practicable, *he must detail, with citation to the record where appropriate, the particulars wherein the evidence touching the finding is inconsistent therewith or is not of enough*

*moment to sustain it.* See Sandall v. Sandall, 57 Utah 150, 193 P. 1093, 15 A.L.R. 620; First National Bank v. Brown, 20 Utah 85, 57 P. 877; Utah-Idaho Sugar Co. v. Salt Lake County, 60 Utah 491, 210 P. 106, 27 A.L.R. 874; Highland Boy Gold Mining Co. v. Strickley, 28 Utah 215, 78 P. 296, 1 L.R.A.,N.S., 976." [3]

The appellate procedural treatment accorded the instant case by Mr. Justice CROCKETT, in my opinion requires a categorical reversal of the Lavelle case and the others herein cited, failing which, they must of necessity be considered to have been reversed by implication and inconsistency. Highly significant it is that in the main opinion's first paragraph in which claimed errors are enumerated, the author does not include a single one directed at the two awards which, later in the opinion, are knocked out. Why not, except that they were *not* attacked on appeal? Who are we to extend a gratuitous assist to any one litigant against another where no plea for assistance is made, and where the opponent is not even extended the opportunity of answering an unclaimed error?

The fact that the appellant did not specify the awards as having been born in error, should end the matter, but the main opin-

1. 57 Utah 150, 193 P. 1093, 15 A.L.R. 620.
2. 122 Utah 253, 248 P.2d 372, 375.

3. See also Lepasiotes v. Dinsdale, 121 Utah 359, 242 P.2d 297, and Aiken v. Less Taylor Motor Co., 110 Utah 265, 171 P.2d 676.

194

ion having presumed to raise an issue not raised by anyone else, prompts this writer vigorously to challenge the apparent conclusion that the alimony and attorney's fee awards were either inequitable, unjust, capricious, arbitrary, unreasonable or something else that the main opinion neglects to point out except by way of generalized ipse dixit.

So, as to 2) : I think someone clearly and specifically should demonstrate where the trial court acted inequitably, unjustly, capriciously, arbitrarily, unreasonably or something else in making the awards mentioned, particularly when it appears from the record that plaintiff was not employed gainfully, being strapped with the necessity of caring for an infant, and particularly when a casual perusal of the record, bulky as it is, makes it clear that the services and time expended were well worth far more than $500, much less $250. The instant decision, I venture, will not endear itself to the practitioner whose lot is difficult enough without having attorney's fees eliminated on appeal, without error assigned and on grounds which I believe to be unwarranted. The attorney's fee in this case would not represent one monthly payment on the foreign Porsche sport car purchased by defendant.

Our own cases holding that we will not disturb the lower court's findings if based on any substantial believable evidence, or, put another way, that we will not disturb such findings unless the evidence, viewed in a light most favorable to the trial court's conclusions, shows that the trial court clearly, arbitrarily, capriciously or unreasonably erred, are so numerous as to make their citation monotonous. In the present case I believe the litigants and the trial court are entitled to be apprised in the main opinion as to where in the record, and why, the action of the trial court was so arbitrary as to require reversal of the alimony and attorney's fee awards. I believe that Mr. Justice Crockett himself has emphasized the principles enunciated above, relating to appellate review, so frequently and repeatedly that his conclusions in the instant case cannot meet the test of his own previous pronouncements.

Since the writing of this partial dissent, the main opinion has been changed somewhat by the addition, among other things, of the following statement:

"* * * under the broad powers of review in equity with which this court is endowed, when a divorce decree is under attack, it has always been regarded as an attack upon the whole decree (See Porter v. Porter * * * Griffiths v. Griffiths * * * Alldredge v. Alldredge), and when it appears that there is an abuse of discretion so that an inequity or injustice is wrought, the court has proceeded to make such adjustments as it deemed necessary to do justice between the

parties and to give effect to the purpose just mentioned above (see e.g. Hendricks v. Hendricks * * * Dahlberg v. Dahlberg * * * Wilson v. Wilson * * * Pinion v. Pinion * * * Porter v. Porter)."

An examination of all of these cases discloses no language whatever to the effect that when a divorce decree is under attack, it has always been regarded as an attack upon the whole decree. And, with the possible exception of one case, Griffiths v. Griffiths, every one of the cases cited involved a modification of the decree, *but only after the appellant specifically had assigned the subject matter as error or asked the appellate court for a reversal of that specific subject matter*, thus calling to the attention of the court those matters deemed reversable, giving the other side an opportunity to meet and challenge the claimed errors,—not, as here, simply creating an issue for one of the parties and granting such party relief for which he never asked.

It is most difficult to understand how the main opinion could cite the cases mentioned for the proposition enunciated. In Porter v. Porter the appellant *claimed error* as to the subject matter modified. In Alldredge v. Alldredge the appellant *asked the court to reverse* the decree and award alimony. In Hendricks v. Hendricks the appellant *assigned as error* the alimony award. Dahlberg v. Dahlberg, rather than standing for the proposition for which the main

opinion gives it credit, in discussing the difference in appellate review in law cases and cases in equity, cited Jensen v. Howell, 75 Utah 64, 282 P. 1034, approving the following language:

"In the latter (equity cases), our duty and responsibility in approving or disapproving findings *when challenged* are more comprehensive. In such case, on an appeal and a review on questions of both law and fact, and *on a challenge* of findings, the review in effect is a trial de novo." [77 Utah 157, 292 P. 217.]

In Wilson v. Wilson, an opinion written by Mr. Justice Crockett, there is absolutely no language that stands for the proposition that when a divorce decree is under attack, it has always been regarded as an attack upon the whole decree and that the court will proceed to make whatever adjustments it thinks proper. As a matter of fact, in Wilson v. Wilson, unlike the instant case where no error was assigned as to alimony and attorney's fees, the *appellant specifically attacked the whole decree* as being inequitable. At least, the respondent knew what was being claimed and had an opportunity to meet it, as was not the case here. Furthermore, it is difficult to square the language in the present case with Mr. Justice Crockett's assertions in the Wilson case [296 P.2d 981] when he said:

"The more recent pronouncements of this court, and the policy to which we adhere, are to the effect that the trial judge has considerable latitude of discretion in such matters and that his judgment should not be changed lightly, *and in fact, not at all, unless it works such a manifest injustice or inequity as to indicate a clear abuse of discretion.*"

In our present case, where $25 per month for only one year was awarded as alimony, and an almost insultingly low attorney's fee of $250 was granted, it is difficult to see where there is "such a manifest injustice or inequity as to indicate a clear abuse of discretion" on the part of the trial court.

The last case, Pinion v. Pinion, cited by Mr. Justice CROCKETT in support of the generalization that when a divorce decree is under attack it has always been regarded as an attack on the whole decree, contains no language that would substantiate such a rule or assertion. On the contrary it adopted the following language which seems to be somewhat different than that of the main opinion, when it said:

"The awarding of alimony and fixing the amount thereof are questions, the determination of which rests within the sound discretion of the trial court; and, unless it is made to appear that there has been an abuse of discretion on the part of the court in dealing with one or both of these questions, its judgments and orders granting and fixing the alimony will not be disturbed." [67 P.2d 268.]

I consider the authorities cited by the main opinion as not supporting the proposition that an attack on part of the decree has always been considered an attack on the whole decree, except, possibly as might be implied in the action, *but not the language,* of Griffiths v. Griffiths, where this court did order a modification of the alimony decree where the parties did not attack it. I am of the opinion that in the Griffiths case, this court unwittingly committed error in changing a part of the decree which was not under attack, and the error has gone unnoticed.

In addition to the foregoing observations, I would like to point out a liberty taken by the majority opinion that is even more startling than to create an issue not raised by either of the parties. I refer to the majority opinion's incorporation of facts in support of the decision that cannot be found in the record before us. Mr. Justice CROCKETT says that:

"Under searching examination he could show only $30; he owes and must pay at least a $500 note the parties signed jointly, *and he has now been inducted into the army,* so that for some time, at least during *his term in the army, \* \* \* his income will*

*be very limited and it is without dispute that he is presently without other economic resources."*

I challenge anyone to point to any place in the record before us to prove that the defendant was in the army at the time of the adjudication of this case. If he is now in the army, as Mr. Justice CROCKETT says, such information must have been received dehors and subsequent to the trial court's adjudication, and it is not my understanding that it is either the function or the privilege of this court to indulge in the luxury of extending itself beyond the printed record. Furthermore, I take issue with the gratuity "that for some time, at least during his term in the army, his income will be very limited." If this be the case, it is outside of this record, is based on conjecture, and is far from being the experience of some persons who have been and now are in the army.

The same kind of philosophy used throughout the main opinion is indulged again when it is stated that "fortunately she has a home with her parents *which she and her child may rely on until she is able to readjust her life and care for herself."* There is nothing in the record establishing any such fact, and for aught this court knows, absence clairvoyance, she and her child presently may be wanderers in the storm.

Since writing an addendum to my opinion in the above case, Mr. Justice CROCKETT has added a phrase to his opinion, which, to point up more clearly, I am noting in capital letters, so that the portion of his opinion with which I took issue is repeated here with the added phrase in caps,—with which I also take issue:

"Under searching examination he could show only $30; he owes and must pay at least a $500 note the parties signed jointly, *and he has now been inducted into the army (A FACT ACKNOWLEDGED BY BOTH COUNSEL IN ARGUMENT AND AS PRINTED IN PLAINTIFF'S OWN BRIEF),* so that for some time, at least during *his term in the army, his income will be very limited. It is without dispute that he is presently without other economic resources."*

I am reluctant, but duty-bound, to take issue further with the capitalized phrase. In my opinion the assertion made is a more radical departure from appellate procedure than those with which already I have taken issue. The added portion assumes that if, *after* final judgment rendered in the lower court, and after that court has lost jurisdiction by an appeal, and while the matter is pending on appeal, certain facts develop which, had they developed and been presented *before* final judgment in the court below, such facts might be considered by the appellate tribunal as a basis for reversal, if the parties, upon confrontation, *have to admit,* at the expense of falsifica-

tion, that such facts are true, and such facts happen to be true. The implication of Mr. Justice CROCKETT'S present reason announced in his addendum, for considering matters ex post facto in reversing an erstwhile solemn judgment of the lower court, becomes startling upon analysis. It simply would mean that if counsel for plaintiff today contacted counsel for defendant and confronted him with the fact that defendant had been discharged from the army and was now making a very substantial income, and such be the fact, and this information were passed along to Mr. Justice CROCKETT, he would have to consider the changed circumstance at this late date and reverse himself, sustaining the award of alimony and attorney's fees, and, instead of saying defendant "has now been inducted into the army so that for some time '* * *' his income will be very limited," would have to say that defendant "has now been discharged from the army so that for some time * * * his income will be very substantial."

In my opinion, the novelty of such appellate practice should not be placed in the reporter system as a precedent to be followed.

As to footnote 7 of the main opinion, Stuber v. Stuber did *not* * consider facts dehors the record to affect the decision as is the case here, hence it seems to be quite inapropos as a supporting authority or for any rule that would permit an appellate

court to use evidence not asserted in the court below in arriving at a result not consonant with the trial court's judgment.

The whole judgment should be affirmed.

* Emphasis supplied throughout.