## PINION v. PINION

No. 5852.   Decided April 30, 1937.   (67 P. [2d] 265.)

*Barclay & Barclay,* of Salt Lake City, for appellant.

*Marion G. Romney,* of Salt Lake City, for respondent.

WOLFE, Justice.

Appellant, plaintiff below, and respondent were married in Kansas on December 22, 1931. They came to Salt Lake City in January, 1932. This action was brought on January 29, 1936. During the four years of married life, defendant was visiting her folks at Arkansas City, Kan., a portion of the time, to wit, from Christmas, 1932, to March, 1933. In December, 1933, she and plaintiff went to Kansas, she returning to Salt Lake City in February, 1934. In December, 1935, she and plaintiff again drove to Kansas. She returned to Salt Lake on January 4, 1936. In August of 1933, defendant had a major operation. Since that time there has been no cohabitation between the parties. At the time of the marriage, plaintiff was 43 years of age and defendant 40 years of age. There are no children of the marriage. Defendant filed a counterclaim for divorce, setting up various acts of alleged cruelty.

When the case came on for trial, the trial judge wisely inquired whether, if it were not possible for the parties to go on living together, it might not "expedite matters very greatly if one of them were to take a divorce, and then, without prejudice as to the property rights, only take evidence as to property rights." It was agreed that for the purpose of the divorce, defendant should make the showing without prejudice as to property rights. This, of course, meant that the court would not consider the element of fault in determining the property distribution.

In the matter of property, the evidence appears to be as follows: Plaintiff makes about $160 a month as a locomotive fireman. He must pay his expenses while on the road, amounting to about $2.50 a day. On January 28, 1936, one day before this action was brought, he had $813.48 in the bank. There is no evidence that there was this much there

at the time of the trial. He had $2,000 face value in mortgages with the Tracy Loan & Trust Company. One thousand dollars of this was worth par. The other was in a mortgage that had delinquencies. He had an $800 soldier's bonus, a $500 Home Owners' Loan Bond. There was a $300 certificate with the Masonic Temple. There was $600 owing by one Blair, who had taken bankruptcy, and $70 from a Mr. Kinney. The life insurance had no cash surrender value. The outside limit of his available assets, therefore, on the day he filed the suit, independent of his wages, was $4,-583.48, which, if liquidated, would probably be not more than $4,000. The testimony was that all of this property had been accumulated from the wages of plaintiff before marriage; that at the time of the marriage there was more property but some of it had been used for her operation and their living expenses in addition to the monthly wage he made. The evidence showed that prior to her marriage she had clerked in a store and that she also gained remuneration from playing in an orchestra at home. She testified she had fully recovered from the operation but later stated her health was "not very good."

The evidence of defendant satisfied the court that she was entitled to a divorce. He granted her that, but took the matter of the property distribution under advisement. He later gave her $55 a month alimony with no fixed period. Plaintiff appeals, claiming an abuse of discretion. During the trial, counsel for defendant suggested that the parties agree on a division of his property, but plaintiff's counsel responded that he thought the court should fix it because she had the idea that he had more property than he really had.

At the end of the trial the court stated that he thought that while "the testimony that he was casting her off" was "conclusive enough to get her a divorce, I am not disposed to penalize him. All I am interested in doing is to give her such sum as will properly provide for her, under the circumstances, and, at the same time to leave him such sum as

will properly take care of himself." This was as it should be, because plaintiff had no opportunity to present testimony which would have served to mitigate her testimony of cruelty. The court also stated,

"I think what I should do is to fix one sum. I think, under all the circumstances, I should fix it a little less than I otherwise would, because Mr. Pinion has still got a heavy expense on the road."

Evidently the court thereafter came to a different conclusion, because he decreed $55 a month, not as installments on a fixed sum, but continuously.

Many of our Utah divorce appeals have been cited as well as some from other jurisdictions. Since each case goes off on its own facts, not much profit is gained by discussing them. Plaintiff sets out the elements which should be taken into consideration by the court as governing its discretion in coming to a conclusion as to a property settlement: (1) The amount and kind of property owned by each of the parties. He owned about $4,000 in property,— she nothing. (2) Whether the property was his before coverture or accumulated jointly. In this case it was brought to coverture by him, he having earned it by shoveling coal into the engines. (3) The ability and opportunity of each to earn money. He is 47. His remaining years of useful work as a locomotive fireman are undoubtedly not so many. She is 44. She was a clerk at 40. She may have difficulty replacing herself. That must be taken into account. She may have difficulty replacing herself. That must be taken into account. She may, if in good health and capable, however, outlast plaintiff in years of the sort of thing she does as compared to the physical labor he does, and in view of the modern tendency to engage younger men for the harder work. (4) The financial condition and necessities of each party. If it costs him $2.50 a day to live, that would be $75 a month, without insurance, lodge dues, clothes, etc. She could probably live in Kansas more reasonably and in better style on

$55 a month than he could on the remainder. (5) The health of the parties. There is nothing to show him in other than good health. She states she is in "not very good health," but in what way is nowhere specified. (6) The standard of living of the parties. The fact that they lived on $160 a month, plus what was spent out of his savings, gives the best idea of the standard of living. He would not be obligated in this sort of a marriage to keep her for the duration of her life to this standard. (7) The duration of the marriage. It was for four years. This element must be related to the following factors: (8) What did she give up by the marriage? Was her economic status better or worse because of it? The evidence seems to point to the fact that she fared better or at least as well economically by the marriage as before it. She was able to have a serious operation performed. The next factor is also important and related to the duration of the marriage. (9) What age were they when married? As a general rule a young couple, married a short time, who break up with no children, would call it a misadventure in matrimony, and unless the wife has suffered more than the ordinary wear and tear of matrimony or stands by the divorce to lose substantial material benefits in economic status or loss of inheritance, no alimony ordinarily will be given. Where, as in many of these cases, the swains start with no assets except their earning power and end with no assets except that earning power it would place an unwarranted burden on the young husband to help him support, or partially support, the wife after they have split up. In cases where her health has suffered or his conduct has been such as to justify alimony for a period may be granted. If her husband has property and she would go forth penniless, the situation would merit a property division. If there has been brutality or real cruelty, punitive elements enter and she would be entitled to have that taken into consideration as a partial compensation for what she suffered. These are only general rules to guide the discretion of the court subject to considerable variation according to

the multitudinous circumstances in regard to which cases may vary.

In this case the question of fault or cruelty cannot be taken into consideration in the property settlement because the parties stipulated and the court stated it would not be considered. The plaintiff was not given an opportunity to answer by evidence the testimony of defendant. The alimony or property distribution was to be made without considering the matter of fault on the part of either spouse. Fault was to be considered only in the matter of determining whether she or either was entitled to a divorce. So mistreatment, if any, cannot be an element in this case.

As to the age when they part company. She is 44. That and the fact that she was married four years would ordinarily entitle her to a substantial portion of his property if the interruption of her former career by marriage left her materially worse off in opportunity as compared to where she might have been had it not been for the interruption, or the opportunity or ability for readjustment had materially suffered. Otherwise, four years out of one's life well supported, with a return to singleness, cannot necessarily be counted as a detriment. Of course, the element of her happiness or unhappiness during that interruption is purposely omitted in summarizing this case. If she had helped to accumulate part of his fortune, she would ordinarily be entitled to a substantial portion, at least of that which she aided in accumulating depending upon all the circumstances attending the accumulation. If she takes her part in installments which depend on his retaining his job, she would ordinarily be entitled to more than would be given if she took on a cash and carry away basis.

In a number of cases we have held as stated in the language of *Read* v. *Read*, 28 Utah 297, 78 P. 675, that

"The awarding of alimony and fixing the amount thereof are questions, the determination of which rests within the sound discretion of

the trial court; and, unless it is made to appear that there has been an abuse of discretion on the part of the court in dealing with one or both of these questions, its judgments and orders granting and fixing the alimony will not be disturbed."

In some cases we have used language to the effect that an appeal in a divorce case is in effect a trial de novo in this court. *Hendricks* v. *Hendricks*, 91 Utah 553, 63 P. (2d) 277. The language would seem to imply that in a divorce case, even more than in an equity case, we will make our decision independently of the findings of the lower court. Even in an equity case, we do not overturn the judgment unless it is fairly against the preponderance of the evidence. The writer believes that every intendment should be in favor of the trial court, for not only does he in a divorce case have the parties before him, enabling him to test credibility by demeanor, but the conduct and manner of the parties in the court room sometimes gives much aid in solving who really is at fault. Moreover, a trial judge may "live with" a divorce proceeding in its preliminary stages and know it from angles which the record does not disclose. In any event, solutions of these domestic problems are difficult and largely not capable of a satisfactory solution either to the judge or the parties. The court is often compelled to use every ingenuity in order to stimulate human nature to do its duty or its utmost toward fulfillment of that duty. This court does not have those problems to meet. But in a number of cases, we have taken upon ourselves to modify decrees in ways which were insubstantial as compared to what is asked in this case. *Dahlberg* v. *Dahlberg*, 77 Utah 157, 292 P. 214; *Hampton* v. *Hampton*, 86 Utah 570, 47 P. (2d) 419. *Schuster* v. *Schuster*, 88 Utah 257, 53 P. (2d) 428, comes closest to the instant case, in fact parallels it in many ways. In that case the marriage duration was a little shorter than in this case. Both had children from prior spouses, but there was not issue of that marriage. Both spouses were in middle life as in this case. In that case the wife had possibilities perhaps of increasing her income upward of $25 a month.

There the defendant was making $285 a month, yet this court set an outside limit of $1,500 payable in installments, and when that was paid the alimony to cease. In that case the record does not show that she had separate property. In the instant case, the defendant may have suffered somewhat in having her earning career interrupted and it may take time to make the readjustments and reestablish herself in work. On the other hand, she has received support for four years and had the advantage of having her surgical and medical bills paid. We think she should have $2,000 in lieu of all claims for alimony, payable $1,000 in cash or in the market value of the certificates held with Tracy Loan & Trust Company with another $1,000 to be paid at the rate of $60 or more a month until paid, or if he cannot pay the $1,000 down, that she receive the sum of $60 a month for a period of thirty-eight months, or a total, if so paid in installments, of $2,280. This will give her substantially one-half of the property plaintiff possessed at the beginning of the action. This will leave him less than one-half for he will have paid attorneys' fees for both sides and costs. But, being single, he will have a chance to recoup with his job. The attorney for defendant has already had $50 for services. He is allowed $60 more in view of plaintiff's having to bear all costs and both attorneys' fees.

The cause is reversed and remanded to the lower court, with instructions to recast the findings and decree in accordance with this opinion.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.