296 P.2d 977

### Viola Fogle WILSON, Plaintiff and Respondent,

### v.

### Marcel Felix WILSON, Defendant and Appellant.

No. 8434.

Supreme Court of Utah.

May 9, 1956.

81

unnaturally, to be released from the bonds of matrimony at the least possible economic disadvantage to himself.

Having found the issues in favor of the plaintiff, the court awarded her substantially all of the property possessed by the parties, as follows: (1) the family home and furnishings at Bountiful. This home was originally purchased for $15,950, had a value of $19,000 to $20,000, and upon which there was a mortgage of $9,352.74; (2) a home in Salt Lake which had been purchased for $2,700 and had a value of between $4,000 and $5,000; (3) uranium stock valued at $545.90; (4) a joint bank account in the sum of $827.39; and (5) a tax refund check in the sum of $161.10.

In addition to the award of property just recited, the court awarded plaintiff the sum of $50 per month until a total of $5,000 had been paid, and in regard to such award stated: "Said sum is intended as a portion of the allocation of property to the plaintiff and shall be a charge upon the estate of defendant as to any balance that should remain should he die prior to the full payment thereof." To the defendant the court awarded a 1946 Oldsmobile car and other items of personal property.

The defendant's attack upon the decree is that it is so wholly inequitable and unjust that it manifests an intention to impose a vindictive punishment upon him because he had fallen in love with another

McCullough, Boyce & McCullough, Salt Lake City, for appellant.

LaMar Duncan, Salt Lake City, for respondent.

CROCKETT, Justice.

From a decree awarding the plaintiff a divorce, the defendant appeals. He does not attack the part of the decree granting the divorce; on the contrary, it seems to suit his designs very well. He asked plaintiff to secure a divorce for the reason that he was in love with a certain Mrs. M. and wanted to marry her. Notwithstanding the fact that the divorce was indispensable to his plans, he seems to have desired, not

woman, rather than making a fair and equitable adjustment of the property and income of the parties. He places a great deal of reliance upon the statement of this court in the case of Foreman v. Foreman [1] to the effect that:

"* * * this court is of the opinion that a proper and just settlement of these difficulties could be accomplished by an effort to place the parties as nearly as possible in the position they were in * * * the court should allow Mrs. Foreman a reasonable sum of money per month for such length of time as the court believes will enable her to readjust her life to her former position of self-support."

Reference to the facts of that case emphasizes that no firm rule can be uniformly applied in all divorce cases, and that each must be determined upon the basis of the immediate fact situation.[2] In the Foreman case the parties were past middle age, both had been married previously and each had substantial property. The marriage was plainly ill-advised. It had lasted for only 68 days. In that case the court did state that the proper solution was to undo the error insofar as practicable and place the parties as nearly as possible in the position they were in prior to the marriage. In the instant case the trial court rejected the proposal as manifestly unfair to Mrs. Wilson under the circumstances existing here, and we think correctly so.

In regard to the defendant's contention that the judgment represents an effort of the court to impose a punishment upon him: We recognize that there is no authority in our law for administering punitive measures in a divorce judgment, and that to do so would be improper, except that the court may, and as a practical matter invariably does, consider the relative loyalty or disloyalty of the parties to their marriage vows, and their relative guilt or innocence in causing the breakup of the marriage. It is to be recognized that it is seldom, perhaps never, that there is any wholly guilty or wholly innocent party to a divorce action. The trial court was aware, of course, that when people are well adjusted and happy in marriage, one of them does not just out of a clear blue sky fall in love with someone else; and that when this occurs it is usually an indication that the marriage has disintegrated from other causes.

When it appeared that the purposes of matrimony had been destroyed to the extent that further living together was intolerable, it was in accordance with the court's duty and prerogative to grant plaintiff a divorce.[3] In doing so it is desirable to avoid perpetuation of the difficulties that brought failure to the marriage. The ob-

1. 111 Utah 72, 176 P.2d 144, 154.

2. Pinion v. Pinion, 92 Utah 255, 67 P.2d 265.

3. Hendricks v. Hendricks, Utah, 257 P.2d 366.

ject to be desired is to minimize animosities and to "let the dead past bury its dead" insofar as that is possible. The court's responsibility is to endeavor to provide a just and equitable adjustment of their economic resources so that the parties can reconstruct their lives on a happy and useful basis. In doing so it is necessary for the court to consider, in addition to the relative guilt or innocence of the parties, an appraisal of all of the attendant facts and circumstances: the duration of the marriage; the ages of the parties; their social positions and standards of living; their health; considerations relative to children; the money and property they possess and how it was acquired; their capabilities and training and their present and potential incomes.[4]

At the time of trial, September 6, 1955, the parties had been married 15 years; the plaintiff was 45 years old and the defendant 39. During the period of the marriage the parties had had varying degrees of financial success. The defendant had earned from as little as $80 a month up to $300 per month, yet the parties had always lived within their income and had accumulated the property listed above. The defendant is a trained beauty culturist and hair stylist. The trial court found his earning capacity to be in excess of $250 per month. In addition, he receives $173 per month from the United States Government for disability relating to his hearing. Plaintiff's evidence is that she is in poor health; that she has been under doctor's care; that she is not presently capable of working and has no special training or skill with which to maintain herself. Her only work experience was as a store clerk prior to her marriage.

The fact that the union had not been blessed with children has been of considerable importance and concern to the parties, particularly to the plaintiff. It would serve no useful purpose to stigmatize the parties by detailing herein the matters of accusation and recrimination between them. It is apparent that the trial court did not believe the accusations against the plaintiff, and that he based his findings and decree upon the fact which seems clearly to underlie the immediate cause of the divorce: that the defendant had fallen in love with Mrs. M. and wanted to be free so he could marry her. It is significant that just about the time (March, 1955) defendant made this declaration to his wife, this Mrs. M. obtained a divorce; that she was living in a rental unit in the home of the defendant's father, and the defendant was contributing to her support by paying her rent and buying her food; and that meanwhile the defendant ceased to contribute to the support of the plaintiff so that she had to subsist on what they had previously accumulated.

In many instances of divorce where the woman has spent the years of the prime of her life in a marriage then faces its break-

4. For other lists of the factors to be considered see Pinion v. Pinion, supra; Mac-

Donald v. MacDonald, 120 Utah 573, 236 P.2d 1066, 1071.

up, without special training or skill, in impaired health, and with dimmed prospects of a favorable marriage and life companionship, courts have seen fit to impose upon the erring husband the burden of permanent alimony. Apprehensions of dependency under such circumstances were well expressed in the case of MacDonald v. MacDonald [5] by Justice Henriod in a concurring opinion:

> "Here the better part of appellant's life has been devoted to her husband, and she now arrives, in an atmosphere of misfortune, at a bourn of incapacity with an uncertain future, where current monthly contributions from the husband could aid in insulating against the day when this appellant well might need assistance most."

The trial court here was similarly apprehensive of the welfare of Mrs. Wilson but appears to have believed that because of the attitudes of the parties an award of permanent alimony would be less practicable than some other solution. He expressed the thought that requiring the defendant to carry the burden of permanent alimony would lead to "almost unbearable bitterness," and sought to make an adjustment of their affairs so this could be avoided.

Although the defendant's earning capacity, plus his pension, would produce substantially over $400 a month, the court awarded plaintiff $50 per month, obviously not enough for her support, and the property above set out. He seems to have proceeded on the theory that the property the plaintiff receives, if prudently managed by her, as her frugality during her married life indicates she may well do, could provide her with a reasonable degree of security if supplemented by this amount. The defendant would thus be left relatively free to use his income to discharge his future responsibilities without being unduly burdened in maintaining his former wife at the same time, and on the other hand, this would provide for the plaintiff the maximum protection practically available for her from the resources at hand and afford her opportunity to readjust to new conditions of living.

It is true, as defendant contends, that a divorce proceeding is equitable and that it is within the prerogative of this court to review the evidence and to substitute its judgment for that of the trial court under proper circumstances.[6] The more recent pronouncements of this court, and the policy to which we adhere, are to the effect that the trial judge has considerable latitude of discretion in such matters and that his judgment should not be changed lightly, and in fact, not at all, unless it works such a manifest injustice or inequity as to indicate a clear abuse of discretion.[7] We are not disposed to interfere with the disposition of

5. See footnote 4 above.

6. Hendricks v. Hendricks, 91 Utah 553, 63 P.2d 277.

7. See MacDonald v. MacDonald, footnote 4 above; Lawlor v. Lawlor, Utah, 240 P. 2d 271.

the property. However, looking at the de-cree with all proper indulgence, we believe that it does not conform to the design the trial judge was avowedly trying to fashion of imposing an obligation upon defendant to pay a modest amount of alimony for a definite period of time and with a termination date in sight. The payment of $5,000 at the rate of $50 per month would run for 100 months or eight and one-third years. It is our opinion that the decree should be modified to provide that the payments of $50 per month should continue only until the plaintiff's remarriage, or until the sum of $2,400 is paid, whichever occurs first. In all other respects the judgment is affirmed.

The parties to bear their own costs.

McDONOUGH, C. J., and WADE, J., concur.

WORTHEN, Justice (concurring and dissenting).

I agree with Mr. Justice CROCKETT that the trial court properly awarded a decree of divorce to plaintiff. I likewise agree that the decree of the trial court looked at with all proper indulgence cannot be sustained. I am of the opinion that the decree works such a manifest injustice and inequity as to evidence a clear abuse of discretion.

However, I am unable to agree that the minor revision of the decree as provided for in the majority opinion has cured the abuse of discretion *manifest* in the original decree.

The judgment entered by the trial court evidences more sentiment than equity; in fact, I see considerable vindictiveness in the decree. The plaintiff at the time of the marriage was six years defendant's senior— she was 30, he 24. She had never had a steady job in her life. The record would indicate and she testifies that she managed defendant's income and helped to accumulate the property which his work paid for.

In fact, defendant should be most grateful that she did assist him in establishing a substantial estate only to have it all taken plus $5,000 additional and bestowed on her.

Had he died, plaintiff would have received, as his sole heir, $5,000 less than was awarded her. She was permitted to help in determining what award should be made. At the close of the hearing the trial court said to counsel:

"The Court: She may have all property except the check in evidence, and $5,000.00 payable $50.00 a month for one hundred payments for the next one hundred months, or she may choose between the two homes and have $10,-000.00 at a hundred dollars a month, payable in one hundred installments. Please make a choice.

"Mr. Gustin: How is the $10,000.00 payable?

"The Court: At a hundred dollars a month for one hundred consecutive months. By that I am impressed with the fact that she is a better manager than he is.

86

"Mr. Duncan: She has the choice between all of the property except this check in evidence, and five thousand dollars.

"The Court: That's right. That is one choice.

"Mr. Duncan: Or she has a choice between the two homes and ten thousand dollars.

"The Court: Payable at one hundred dollars a month for one hundred consecutive months.

"Mr. Duncan: May I have just a moment?" (A short recess was taken.)

"Mr. Duncan: I am advised that she would rather take all the property and $5,000.00 at $50.00 a month.

"The Court: All right  *  *  *."

The check in evidence for $545.90 referred to by the court didn't go to defendant. That went to pay court costs and attorneys' fees.

The rules oft referred to by this court to be applied in determining the proper settlement of the property rights and the award of alimony seem to have been disregarded in this case. We have never before implied that the cruelty of a husband who falls in love with another woman, and which is of short duration, justifies stripping him of all that has been accumulated by his efforts over a period of 15 years and giving her a bonus of $5,000 additional.

What did the plaintiff give up by the marriage? The evidence would warrant the conclusion that she gave up insecurity for security. Her status as a part time clerk was replaced by that of a happy wife for nearly 15 years.

The majority opinion justifies a larger than usual award because of plaintiff's lack of special training or skill. But defendant is not to be charged with her lack of skill or training. Defendant has worked at many jobs; his life has been one of long hours and hard work. His training as a beautician was taken under the G. I. Bill of Rights.

Can the award made of all the property plus $5,000 be justified in order that plaintiff shall not be worse off because of the marriage? The record would strongly suggest that plaintiff would have been unable to accumulate anything had she remained unmarried.

The plaintiff was given a substantial—yea a large—windfall.

The record discloses the following property awarded to plaintiff with indicated values:

(1) The Bountiful home—net value over mortgage approximately $10,000.

(2) Salt Lake City home (clear) value $4,000 to $5,000.

(3) Furniture which plaintiff testified as having a value of $4,000.

Defendant was awarded:

(1) 1946 Oldsmobile valued at $95.

(2) Defendant's carpenter tools, value not indicated.

(3) Beauty shop equipment—$300.

Defendant receives $173 per month on account of service connected disability sustained by defendant while in World War Two.

The court awarded to plaintiff property valued at between $18,000 and $19,000, plus an award of $5,000, as a part of the allocation of property.

As heretofore observed, the court gave two options to plaintiff. Had the court given defendant the option of giving plaintiff one of the homes and $10,000, defendant would have been able to give plaintiff the Salt Lake City home and by selling the Bountiful home, pay the $10,000. Plaintiff testified that she would rather live in the Salt Lake City home if it wasn't next to his folks. It was stated in appellant's brief and not disputed by respondent that plaintiff has sold the Bountiful home.

I am of the opinion that if equity is to be done between the parties, defendant should either be given the home in Salt Lake City or be relieved entirely of the cash payment of $5,000.

The beauty shop equipment is valued at $300 but defendant has no place to use it. It was used in the basement of the Bountiful home.

Even plaintiff indicated that under other conditions she should not be awarded all the property—she testified as follows:

"I feel like whatever Mark and I have accumulated, we have accumulated it together, and I feel like, under any other circumstance, Mark would be entitled to it but not to take to some other woman, no."

There is nothing in the decree to restrain plaintiff from taking the $23,000 to $24,000 awarded to another man.

HENRIOD, J., concurs in the conclusion reached by WORTHEN, J.