Barbara READ, Plaintiff and
Respondent,

v.

Richard C. READ, Defendant
and Appellant.

No. 15859.

Supreme Court of Utah.

April 4, 1979.

J. MacArthur Wright, of Atkin & Wright, St. George, for defendant and appellant.

Patrick H. Fenton, Cedar City, for plaintiff and respondent.

STEWART, Justice:

Defendant Richard C. Read appeals from a divorce decree dividing the marital estate between the parties. He attacks those portions of the decree which awarded Barbara Read $500 alimony per month for five years and $250 per month thereafter, and also the disposition of property which he contends is inequitable and unjust. He also claims error in the award to plaintiff of $600 attorney's fees. Defendant does not contest the propriety of the award of custody of Patti to the plaintiff, nor of $250 per month for her support.

The parties were married in 1954. They had four children. At the time of this action, only the youngest daughter, Patti, had not reached the age of 18. From 1960 to 1972, the defendant managed a paint store in Granger, Utah. The family sold that business and moved to St. George, Utah, in January, 1972. The parties started a similar business known as Read's Paint & Decorating Center, with defendant managing the store. In addition to the income

derived from the store, the parties received income from plaintiff's part-time work as a secretary.

The awards as to property, with the values the court placed thereon are as follows:

To the plaintiff:

The home, with the furnishings therein, valued at $58,000, with an equity valued at $16,000

A condominium at Brian Head, with an equity valued at $3,000

A boat—value $8,000

A camper—value $500

A note receivable on commercial property sold under contract—value $25,000

A tract of about six acres of land—value $60,000

Four automobiles

A one-fourth share in a gold mine acquired by the parties for $500

First right of refusal for the family membership at Bloomington Country Club.

To the defendant:

The paint store business—value $10,000

One automobile, value not shown

One half of their share in the gold mine

The membership in Bloomington Country Club, with obligation to make the payments on it.

Defendant points out that the awards to plaintiff amount to about 90 percent of the assets accumulated by them during their 25 years of marriage. He argues that this is excessive and inequitable and that it resulted because the trial court imposed a vindictive penalty upon him because he was most at fault in the breakup of the marriage and because he had fallen in love with another woman.

It is well established that the trial court has considerable discretion in the allocation of the property and financial resources of the parties. Nevertheless, this discretion is not entirely without limit.

In the case before us it appears that the trial court's property award may reflect a degree of punishment against the defendant for his extra marital conduct and relative "guilt" in bringing about the dissolution of the marriage. A trial court must consider many factors in making a property settlement in a divorce proceeding, but the purpose of the settlement should not be to impose punishment upon either party. In *Wilson v. Wilson,* 5 Utah 2d 79, 296 P.2d 977 (1956), we stated the law with respect to this issue:

In regard to the defendant's contention that the judgment represents an effort of the court to impose a punishment upon him: We recognize that there is no authority in our law for administering punitive measures in a divorce judgment, and that to do so would be improper, except that the court may, and as a practical matter invariably does, consider the relative loyalty or disloyalty of the parties to their marriage vows, and their relative guilt or innocence in causing the breakup of the marriage. It is to be recognized that it is seldom, perhaps never, that there is any wholly guilty or wholly innocent party to a divorce action. The trial court was aware, of course, that when people are well adjusted and happy in marriage, one of them does not just out of a clear blue sky fall in love with someone else; and that when this occurs it is usually an indication that the marriage has disintegrated from other causes.[1]

When a marriage has failed, a court's duty is to consider the various factors relating to the situation and to arrange the best possible allocation of the property and the economic resources of the parties so that the parties and their children can pursue their lives in as happy and useful a manner as possible. If it appears that the decree is so discordant with an equitable allocation that it will more likely lead to further difficulties and distress than to serve the desired objective, then a reappraisal of the decree must be undertaken. In view of these principles, it is our view that the property award in this case is far too disparate and that the decree must be modified. In light of this conclusion, and because the case is equitable in nature, this

---

1. See also *English v. English,* Utah, 565 P.2d 409 (1977).

Court may either exercise its own prerogative of making a modification in the decree,[2] or remand for entry of a modified decree by the trial court. In this case there are too many inconsistencies and unresolved questions in the trial record for this Court to make that modification satisfactorily. For this reason the case should be remanded to the trial court for a further hearing on the question of the nature and extent of the parties' assets and liabilities.

In its findings of fact the trial court assessed the value of the boat at $8,000 and the camper at $500 in spite of the fact that no evidence was admitted as to their value. The court also found that the six-acre unimproved lot owned free and clear by the parties was worth $60,000 when the only credible evidence concerning its value indicated it to be worth $30,000 to $35,000. Moreover, according to the testimony at trial, the parties owned six cars; yet the trial court's award referred to only five, leaving one vehicle unaccounted for.

The trial court found that the family business was worth $10,000. It is unclear from the record what this figure encompassed. The ambiguity surrounding this assessment and the amount of income purportedly derived from the business seems to be disproportionate with the assets and liabilities it has accumulated. The Reads received income from four sources: (1) the family business, which purportedly generates $12,000 to $16,000 profit per year; (2) Mrs. Read's salary as a part-time secretary, approximately $540 per month; (3) approximately $40 per month from a carpet business; and (4) approximately $43 per month which represents the difference between the monthly payment received on a note for commercial property sold on contract and the monthly payment owed by the Reads on a mortgage secured by that property. With this income, the Reads have acquired a $3,000 equity in a condominium, a boat, a camper, a country club membership, and six cars which include a leased Triumph sports car. They own a home appraised at $58,000, approximately six acres of unimproved land worth $30,000 to $35,000, a commercial note with a net value of $25,000, an interest in a gold mine, and the family business. In addition, at the time of trial the parties helped support two of their four children by paying their college tuition and books and expected to support their youngest child in like manner when she finishes high school. Finally, Mr. Read testified that they had assumed a $10,000 debt of one of their sons.

In view of this evidence a more thorough hearing which fully explores the value of the business and the income-generating capabilities of the Reads is warranted. The value of the boat, camper, and the sixth car should be determined; and the other ambiguities mentioned herein resolved. Finally, in light of our remand for further proceedings, the trial court may wish to reconsider the award of attorney's fees.

This case is remanded for further proceedings consistent with the views expressed herein. The parties are to bear their own costs on appeal.

MAUGHAN, WILKINS and HALL, JJ., concur.

CROCKETT, Chief Justice (dissenting).

In deference to the view of the majority of my colleagues, I have no strong aversion to the remand of this case. But I think it appropriate to record my own conviction of mind that the interests of justice would be better served by this Court exercising its prerogative and making appropriate changes in the decree. The main opinion impresses me as expressing very aptly and correctly certain principles relating to divorces and their review by the Court. The difficulty is that it does not follow those principles.

The opinion points out that when in its judgment the findings and decree have failed in their objective, this Court has the prerogative of making the best possible al-

---

2. Utah Const. Art. VIII, Sec. 9; *Humphreys v. Humphreys,* Utah, 520 P.2d 193 (1974); *Harding v. Harding,* 26 Utah 2d 277, 488 P.2d 308 (1971); *Wiese v. Wiese,* 24 Utah 2d 236, 469 P.2d 504 (1970); *Martinett v. Martinett,* 8 Utah 2d 202, 331 P.2d 821 (1958).

location of the property and resources of the parties so they can adjust their lives in a happy and useful manner. Yet the decision of the Court does not so proceed.

It is to be conceded that the findings and decree of the district court (a circuit judge invited to serve pro tem.) have some deficiencies. Notwithstanding those deficiencies, when the entire picture is surveyed, I think the findings provide a sufficient foundation upon which this Court could make any adjustments necessary to achieve the desired objective.

It is my judgment that this Court could best discharge its responsibility, by modifying the decree and minimizing the burden upon the defendant by reducing the alimony from $500 to $250 per month; by awarding him the $25,000 note; and by awarding him the boat which he assured the court would be regarded as a family asset to be used not only for his own benefit, but also for the children, though they are adults. This procedure would be in harmony with the above stated desired objective, whereas the effect of remand for another trial is but to extend disputations and animosities between these parties, instead of reaching the more desirable end of putting them to rest.