**Viola-Orvokki YELDERMAN, Plaintiff and Respondent,**

v.

**James J. YELDERMAN, Defendant and Appellant.**

**No. 18516.**

Supreme Court of Utah.

Aug. 5, 1983.

David S. Dolowitz, Salt Lake City, for defendant and appellant.

Robert M. McDonald and Jeffrey L. Fillerup, Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant, husband, appeals from a divorce decree contending that the district court awarded excessive alimony, improperly valued the marital property and unfairly divided it, and erred in awarding attorney's fees to plaintiff. We affirm.

The parties were married for twenty-five years. At the time of the divorce, the parties had six living children, all of whom were over the age of eighteen years. Plaintiff had worked prior to the marriage, and had some college education; since the marriage, plaintiff has worked only briefly as a salesperson in a local department store.

Defendant graduated from medical school during the marriage, and specialized in urology. In 1971, defendant organized the Utah Urological Clinic, through which he practiced medicine, with others, until short-ly before the trial in this case. In November of 1981 defendant initiated dissolution of the clinic, and thereafter continued practice as a sole practitioner.

The marital property accumulated by the parties was substantial. The parties agreed to share certain property equally and the court granted such distribution without finding values for such property. The parties stipulated that the value of the residence is $243,000 and the mortgage thereon is $90,826. In addition, the parties stipulated as to the value of certain property, in which they participated as limited partners with other members of the family. These assets are known as the WHY, YBI and Yelderman Investment Company partnerships, which essentially hold bank stock and land. The parties also participated as partners in 6–K Enterprises, a farming operation, and K–Y Ranches, a ranching operation. The value of the latter two partnership interests and the distribution of the interests in all of the partnerships were contested below and here.

The court ordered distribution of the interests in WHY, YBI and Yelderman Investment Company to plaintiff, and the interests in 6–K and K–Y to defendant. In addition to the 6–K and K–Y interests, the court granted to defendant the proceeds on dissolution of Utah Urological Clinic and defendant's retirement trust, containing $85,693 at the time of the decree, together with the proceeds from certain property which was sold by defendant prior to the court hearing in violation of the court's restraining order. The residence was distributed to plaintiff subject to the mortgage.

Defendant appeals, arguing that the distribution was disproportionately in favor of plaintiff and challenging the court's findings as to the value of 6–K and K–Y, the Utah Urological Clinic and his retirement trust.

As stated above, the value of these assets was contested, and conflicting evidence was presented in that regard. Defendant acknowledges that it is within the prerogative

of the trial court to evaluate conflicting evidence in making its decision, but he contends that the appraisals of property made by his experts were correct, and those made by plaintiff's experts were erroneous because his experts were more qualified. In addition, defendant argues that his appraisals of some assets were uncontroverted since the only evidence submitted by plaintiff in contradiction were the values stated by defendant in loan applications previously made by him.

▆▆▆ The weight and credibility of the witness, including expert testimony, and evaluations of property are matters to be determined by the trier of fact.[1] The values as found by the trial court here are substantiated by the record, and will not be disturbed by this Court absent showing of abuse of discretion, which we do not find in this case.

▆▆▆ Defendant separately contends that the court erred in valuing his retirement trust at the full amount on deposit rather than discounting that amount. He cites *Bennett v. Bennett,* Utah, 607 P.2d 839 (1980) and *Dogu v. Dogu,* Utah, 652 P.2d 1308 (1982) where the trial court awarded each party a portion of the retirement fund, receivable in the future. Those cases, therefore, are not applicable here. This issue is governed by the rule in the cases cited in footnote 1, that it is within the province of the fact finder to believe those witnesses or evidence it chooses. We are not persuaded that the rule should be applied differently with regard to this particular asset.

▆▆▆ Defendant also contends that the parties invested in the 6–K and K–Y partnerships for the purpose of sheltering his large income from taxes, and the result of the Court's judgment is to give to plaintiff all of the profitable banking property and to distribute all of the tax loss liabilities to him. In his post-trial memorandum, filed in the district court, defendant proposed distribution to him of all of the partnership interests. The court declined to follow this proposal, and stated in its Finding of Fact No. 10:

> Some of the objectives of the Court in arriving at a fair division are to accomplish a division of the properties as nearly as practicable on an equal basis based upon the Court's determination of fair market values and taking into account the assumption of marital debt; to award to defendant his own business assets and those active business properties which require his management expertise and which provide tax shelter, and to award to plaintiff those properties which require little or no management expertise, debt service or tax shelter and have some reasonable prospect for liquidation in the hands of a relatively unsophisticated business person.

Under U.C.A., 1953, Section 30–3–5(1) the court is empowered to "make such orders in relation to the ... property ... of the parties ... as may be equitable." In commenting on the court's discretion in these matters, this Court said in *Read v. Read,* Utah, 594 P.2d 871 (1979):

> When a marriage has failed, a court's duty is to consider the various factors relating to the situation and to arrange the best possible allocation of the property and the economic resources of the parties so that the parties and their children can pursue their lives in as happy and useful a manner as possible.

We believe the court's objectives, as stated in Finding No. 10, meet this criterion, and that his ordered distribution of the property is designed to accomplish those objectives. Further, the distribution is not disproportionately in favor of the plaintiff, as defendant claims. On the contrary, 56% of the value of the marital property, as found by the trial court, was distributed to defendant and 44% was distributed to plaintiff. The property distribution made by the district court is affirmed.

---

1. *Weber Basin Water Conservancy Dist. v. Skeen,* 8 Utah 2d 79, 328 P.2d 730 (1958); *Holland v. Brown,* 15 Utah 2d 422, 394 P.2d 77 (1964); *Lamkin v. Lynch,* Utah, 600 P.2d 530 (1979).

Defendant also argues that the court awarded excessive alimony to plaintiff, and contends that the award exceeds his present income in sole medical practice.

The evidence admitted by the trial court includes income tax returns of the parties for the past several years. These show that the income derived from defendant's medical practice in 1980 was $67,848, and in 1981 was $64,109. In addition to defendant's medical practice, income was received from various business sources, so that the total income on each return exceeded $100,000. Plaintiff testified that her current living expenses, including a $950 monthly mortgage payment, are $2,830 per month.

Defendant testified that his current living expenses are $2,990. He also testified that his income from medical practice had declined since the dissolution of Utah Urological Clinic, two months previously. The court found that defendant had received $7,744 from his practice for those two months, had collectible receivables of $6,636, and that his projected expenses for those two months were $6,038. On all of the above evidence, the court ordered defendant to pay $2,500 as alimony to plaintiff each month.

■ Defendant argues that the court erred in rejecting as speculative the testimony of Stephen Reynolds, an economist, that the income of a doctor in sole practice was likely to be much less than that of a doctor in group practice, particularly at defendant's age. The court also rejected as too speculative, defendant's evidence that plaintiff could be employed as a salesperson earning $750 per month, if she chose. We agree with the district court judge that these speculations would not be proper bases for determining the parties' respective earning capacity. The district court retains continuing jurisdiction to amend the alimony award under Section 30–3–5(1), if circumstances should change as defendant suggests.[2]

Defendant repeatedly states in his brief that plaintiff and her counsel subjected him to attack and abuse during the trial and in post-trial proceedings. He insists that the trial court judge was swayed by plaintiff's untrue statements and vilification and therefore produced a judgment which shows bias and a clear intent to punish him. Our examination of the record reveals no such attack, abuse or vilification on the part of plaintiff or her counsel. In addition, the comments of the judge at the close of the trial show that his attitude was properly objective in the case. We find no bias, punitive intent nor abuse of discretion on the part of the judge. We find the division of property not disproportionate, and the alimony award not excessive considering the circumstances of each party. The alimony award is affirmed.

■ Defendant contends that the district court erred in making no provision in its judgment for the "Davis tax consequences." See *United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), reh. denied, 371 U.S. 854, 83 S.Ct. 15, 9 L.Ed.2d 92 (1962). In *Davis,* the United States Supreme Court held that a transfer of appreciated property held in the husband's name, to the wife, under a property settlement agreement incorporated in a divorce decree, was a taxable event, triggering immediate recognition for capital gains tax purposes of the appreciated value. The Court held that the transfer was made in satisfaction of a legal obligation on the part of the husband, and as such, was a "sale or exchange" and thus a taxable event. In so holding, the Court considered whether the law of the residential state, Delaware, conferred on the wife any vested interest in her husband's property. Its conclusion was that the inchoate rights of the wife in her husband's property were not vested. The Court stated that Delaware "seems only to place a burden on the husband's property rather than to make the wife a part owner thereof," 370 U.S. at 70, 82 S.Ct. at 1193.

---

**2.** Defendant has submitted with the record in this case the transcript of a hearing on his petition to modify the divorce decree due to changed circumstances filed during pendency of this appeal. The transcript is dehors the record in this case. The order on his petition has not been appealed herein and the matter is not before us.

The parties to this case held all of their property either in joint tenancy or as co-partners in partnerships. Further, in its findings of fact, the court found that the marital estate had been accumulated as a result of the joint efforts of the parties during the course of their married lives. Therefore, both parties had vested interests in all the property as co-owners. Divisions of property between co-owners normally are not considered sales or exchanges under the Internal Revenue Code.[3] We find no error in the judgment in failing to make a determination of any actual *Davis* tax consequences as that is a matter of federal law and is not within the province of the district court or this Court in a divorce action.

Finally, defendant argues that the court erred in awarding plaintiff attorney's fees of $15,000. At the time of the trial, defendant did not object to the evidence given by plaintiff's counsel that he had expended 191 hours of time to his client's case, nor to the reasonableness of counsel's usual charge of $100 an hour. The district court granted plaintiff less than the amount she owed to her attorney, but defendant contends that in view of the substantial property award, plaintiff should be solely responsible for her own attorney's fees. In *Gramme v. Gramme,* Utah, 587 P.2d 144 (1978), we rejected defendant's argument under circumstances similar to those found by the court here.

Though plaintiff received a substantial amount of property under the decree, she received no cash and has no income other than the alimony which defendant was ordered to pay to her with which to pay her attorney. Under U.C.A., 1953, § 30–3–3, the court is empowered to award such suit money as will allow a party to a divorce to bring or defend the action. The record shows that after the complaint was filed defendant refused to pay the mortgage on the residence and also refused to give plaintiff sufficient money during the course of this action so that she could pay the mort-gage. The result was that the mortgage was seven months in arrears at the time of the trial, and the court ordered defendant to pay the arrearage to prevent foreclosure. During the course of this action, defendant sold real property in Texas which was held in the joint names of the parties and failed to account for the proceeds of some $91,000 until the time of the trial. He then said that he had used the money to pay marital debts, which the court accepted. Nevertheless, as a result of defendant's actions, plaintiff found it necessary to obtain a restraining order against defendant from selling any more marital property in August, 1981. Thereafter, defendant sold additional marital property and received $77,400 in proceeds. At the time of the trial defendant testified that this money was used to pay his appraiser's fees, and other costs of this action. It is apparent that some portion of plaintiff's attorney's fees were incurred because of the defendant's own actions. Under these circumstances, as in *Gramme,* supra, the court did not abuse its discretion in ordering defendant to pay plaintiff a portion of her attorney's fees.

Judgment affirmed. Costs to plaintiff.

STEWART, J., does not participate.

---

**3.** *See Beth W. Corp. v. United States,* 350 F.Supp. 1190 (S.D.Fla.1972); *Imel v. United States,* 523 F.2d 853 (10th Cir.1975).