**David L. CANNING, Plaintiff and Respondent,**

v.

**Caleen S. CANNING, Defendant and Appellant.**

**No. 860016–CA.**

Court of Appeals of Utah.

Oct. 16, 1987.

Brian M. Barnard, Salt Lake City, for defendant and appellant.

Lewis B. Quigley, Salt Lake City, for plaintiff and respondent.

Before JACKSON, DAVIDSON and GREENWOOD, JJ.

## OPINION

JACKSON, Judge:

The parties herein were both granted a divorce in a June 28, 1983 decree that distributed only a few items of personal property. All other issues were taken under advisement. The proceedings were final-

ized by an amended judgment entered February 14, 1984. The assets of the parties were divided almost equally. Mr. Canning was ordered to pay about $6,000.00 of personal and joint obligations and $350.00 monthly for support of two minor sons (issue of a prior marriage of the parties). Alimony was denied. On appeal, Mrs. Canning challenges the distribution of property, the amount of child support, and the denial of alimony. We affirm the distribution of assets and obligations and the child support award. We reverse the amended judgment on the issue of alimony and remand for additional findings and possible modification.

## ALIMONY

■ In this case, the denial of alimony was a clear abuse of discretion because the record does not reveal that the court considered or made any finding of Mrs. Canning's current or future ability to work. *Higley v. Higley,* 676 P.2d 379 (Utah 1983). *Higley* was decided on December 19, 1983, while the Canning findings were being finalized; its ramifications were not addressed in the briefs of either party to this appeal. Here, the trial court found only that "Plaintiff [David Canning] had biweekly gross income of $1,019.00, and Defendant [Caleen Canning] was unemployed" at the time of trial (Finding of Fact No. 3) and that "Defendant should be awarded no alimony" (Finding of Fact No. 7).

The purpose and objective of alimony have been described in a framework of several decisions. The cornerstone is language in *English v. English,* 565 P.2d 409 (Utah 1977), adopted from another jurisdiction:

> The standard utilized by the trial court, viz., the length of the marriage and the contributions of each to their joint financial success, is not an appropriate measure to determine alimony. There is a distinction between the division of assets accumulated during marriage, which should be distributed upon an equitable

basis, and the post-marital duty of support and maintenance.

> The purpose of alimony is to provide support for the wife and not to inflict punitive damages on the husband. Alimony is not intended as a penalty against the husband nor a reward to the wife....

In *Nace v. Nace,* [107 Ariz. 411, 489 P.2d 48, 50 (1971),] the court stated that the most important function of alimony is to provide support for the wife as nearly as possible at the standard of living she enjoyed during marriage, and to prevent the wife from becoming a public charge. The court observed that criteria considered in determining a reasonable award for support and maintenance include the financial conditions and needs of the wife, the ability of the wife to produce a sufficient income for herself; [sic] and the ability of the husband to provide support.

*Id.* at 411–12 (citations omitted). *See Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985); *Jeppson v. Jeppson,* 684 P.2d 69, 70 (Utah 1984).[1] Failure to consider the three factors enunciated in *English* constitutes an abuse of the lower court's discretion. *Paffel v. Paffel,* 732 P.2d 96, 101 (Utah 1986).

Mr. Canning earned almost $28,000 annually as a Mountain Bell repairman during each of the two calendar years prior to the divorce. He had seventeen years of tenure with his company. Mrs. Canning had earned about $1,200 during the prior year. She had only a high school education and insignificant job skills to market. Her off-and-on work was always in the minimum wage category. Her ability to work was impaired by an ulcer and by the disabilities of their minor sons. Both were handicapped by learning dysfunctions; one was being treated by a psychologist for emotional problems. She was seeking a flexible work schedule so she could devote necessary time to their special needs. It is doubtful that she could find and keep a full-time job. Even if able to do so, her

1. For more expansive lists of criteria see *MacDonald v. MacDonald,* 120 Utah 573, 236 P.2d 1066, 1070 (1951) and *Wilson v. Wilson,* 5 Utah 2d 79, 296 P.2d 977, 979–80 (1956).

earnings would be minimal for an extended period.

Mr. Canning claimed necessary monthly living expenses amounting to $350 more than Mrs. Canning claimed for herself and the two sons. We note that he was paying an identical amount, i.e. $350, as child support under a temporary order, later made permanent by the decree. Mr. Canning's annual gross income will be about $24,000 after deducting child support (assuming no increase in salary). The disparity between his annual income of $24,000 and her $1,200 plus $4,200 child support is striking, even though he was ordered to pay $3,306 of marital debts and $3,212 of debts incurred by him after the parties separated.

The denial of alimony to Caleen Canning creates a great disparity in future annual incomes and the parties' respective standards of living, a situation remarkably similar to that created by the lower court's meager alimony award in *Higley*. David Canning's standard of living will be much closer to what it was during the marriage than will appellant's. When the above considerations are coupled with the absence of any finding about Mrs. Canning's ability to work or her earning capacity, the trial court's failure to award alimony is a clear and prejudicial abuse of discretion. Although this Court has the power to modify the decree accordingly, the lack of necessary findings in the record prevents us from doing so. *Higley v. Higley*, 676 P.2d at 382.

The decree appears to contemplate that appellant would obtain work and earn income sufficient to support herself and the parties' children. Without specific factual findings to that effect, she is left without a baseline for future modification purposes if she does not in fact obtain ongoing, income-producing work. *See id.* at 382 & n. 1. On the other hand, if she does obtain any such work (as long as the baseline is the present zero), that income will reflect improved circumstances to her detriment. She should not be thus penalized, at least until she exceeds the baseline amount which the decree contemplates she will earn, an amount

which would have to be sufficient to provide the necessities of life.

## PROPERTY DISTRIBUTION

The trial court and counsel were perplexed about the effect of the first (almost seventeen year) marriage and divorce of the parties upon their second (twenty month) marriage and divorce. The proceedings became bifurcated to determine how the on-again off-again relationship of the parties should influence the distribution of property and the provisions for support and maintenance.

During this interim in the decision-making process, counsel submitted simultaneous memoranda to the court. Respondent's memorandum was submitted "in support of his position that for purposes of determining alimony and allocating [respondent]'s pension and stock benefits only the period of the parties' remarriage should be considered." Appellant's memorandum was submitted "regarding the effect of a re-marriage on the parties' rights and the [appellant]'s claim upon the plaintiff's retirement benefits." Respondent summarized that "only the period of the parties' second marriage (twenty months) should be considered for purposes of determining alimony or allocation of employment benefits." Appellant concluded that "this Court should consider the marriage relationship of these parties *in toto* and make a fair award of support and alimony and a division of all assets based upon a marriage of eighteen and a half years during which the parties acquired as substantial assets both a home and retirement benefits." The court thereafter recorded its oral ruling on a minute entry form with a handwritten sheet attached. The sheet contains the following paragraph:

Court finds the marriage to be considered in this action is *only* the marriage of *January 1981*. The pension and stock benefit rights come into the marriage as the sole property and rights of Mr. Canning. Wife has retained all she brought into the marriage. Value of pension/retirement fund Court finds is $2,542.00 as of date of trial.

Four months later, the following typed minute entry was entered:

Memorandum ruling on divorce matters not previously ruled upon. In this case divorce has been granted and several other matters decided and ruled upon. As to the remaining matters for ruling:

1. Oral ruling as to pension is not binding upon the court and the court awards defendant ½ of the cash value of the pension plan; ½ of the cash value being $1271.00, total cash value found to be $2542.

2. Defendant having custody of the minor children, Plaintiff is to pay as support the sum of $175.00 per month per child. Defendant may claim youngest child as dependent for tax purposes. Plaintiff may claim older child. Child support to be paid ½ by 5th day of each month and ½ by 20th day [sic] month.

3. Plaintiff to pay marital debts and obligations outstanding and his own debts and obligations and hold her harmless.

4. Life insurance on plaintiff to be in force and effect with children as beneficiaries until children attain their majority. Amount of insurance to be kept in effect need not exceed $15,000 each child. (Court is aware that in event of death of father certain social security benefits would be available to children.)

5. Plaintiff to maintain health, dental, optical insurance as available through his employer, for children, and he is to pay ½ of costs that exceed the insurance benefits payable; cosmetic dental, etc., is not to be paid by either party unless they agree to share such cost.

6. The 1982 income tax refunds should be divided 50/50.

7. Balance of proceeds from sale of house to be divided equally. Note: marital obligations are to be paid by Mr. Canning, plaintiff, and he is to pay Credit Union and J.C. Penney bills he incurred.

8. Plaintiff awarded the stock share plan benefits.

9. Decree has been entered previously, awarding divorce.

10. Matter of child custody, visitation, previously ruled upon.

11. Distribution of personal property has previously been ruled upon.

12. Attorney's fees have been ruled upon.

The underlying premise of Mrs. Canning's appeal is that in "the final decree ... the Court considered only the second (21 month) marriage of the parties and did not consider the first (16+ year) marriage of the parties." We have searched both the decree of divorce and amended judgment in vain. Neither of those documents nor the final findings upon which they are based contain any such language or compel any such inference.

The subsequent action taken and final disposition made by the court also do not demonstrate that the court operated in a rigid compartment of time. Otherwise, there would not have been an award of child support since the minor sons were not issue of the marriage being dissolved. Furthermore, if the trial judge was only taking into account the parties' second, brief marriage, Mrs. Canning would not have been awarded ½ of the pension fund that had accrued primarily during their first marriage.

We recognize that a district judge faces a difficult task in almost every divorce action. "The court's responsibility is to endeavor to provide a just and equitable adjustment of their economic resources so that the parties can reconstruct their lives on a happy and useful basis." *Wilson v. Wilson*, 5 Utah 2d 79, 83, 296 P.2d 977, 979 (1956). In the more recent case of *Fletcher v. Fletcher*, 615 P.2d 1218, 1222 (Utah 1980), the Utah Supreme Court stated:

There is no fixed formula upon which to determine a division of properties, [sic] it is a prerogative of the court to make whatever disposition of property as it deems fair, equitable, and necessary for the protection and welfare of the parties. In the division of marital property, the trial judge has wide discretion, and his findings will not be disturbed unless the record indicates an abuse thereof.

The allocations of the Cannings' assets and liabilities by the trial court reveal a determined effort to place the parties in comparable economic positions. We cannot fault that effort and outcome, except as indicated above in our disposition of the alimony issue. While equality is a worthy goal, precise mathematical equality is not essential or required. See, for example, *Berger v. Berger*, 713 P.2d 695 (Utah 1985), where sixty percent of the value of the assets was awarded to the wife, and *Turner v. Turner*, 649 P.2d 6 (Utah 1982), where the wife received twenty-seven percent of the assets (her calculation) or forty-two percent (his calculation).

■ Mrs. Canning argues that the home became her sole and separate property after the parties' first divorce and remained so after they remarried. Although the house (acquired during the first marriage) was awarded to Mrs. Canning in the first divorce, it was subject to a $15,000 lien in favor of Mr. Canning and to a first mortgage. After remarriage, the parties jointly borrowed additional funds against the home which were used for their personal and mutual benefit, including improvements on the home and purchase of personal property which was later awarded to her.

In any event, the parties stipulated to a sale of the home during the pendency of this divorce action. Three months before trial, they closed a sale and partially distributed the proceeds—over $11,000 to him and over $11,000 to her. Then they filed a stipulation and agreement with the court which recited that they had sold the home and had "in part distributed the proceeds." They agreed that additional proceeds from the sale be held until further order of the trial court. The court subsequently distributed the remaining funds in accordance with its memorandum ruling recited above. In view of all the circumstances described, we cannot say that the district court abused its discretion concerning the home sale proceeds. "A trial court's apportionment of marital property will not be disturbed unless it works such a manifest injustice or inequity as to indicate a clear abuse of discretion." *Turner v. Turner*, 649 P.2d at 8.

■ Mrs. Canning next contends that she did not receive an equitable share of Mr. Canning's retirement benefits. She does not challenge the 50/50 split; she contends that the trial court erred in accepting the value calculated by respondent's expert instead of the higher value calculated by her expert. However, "it is within the province of the fact finder to believe those witnesses or evidence it chooses." *Yelderman v. Yelderman*, 669 P.2d 406, 408 (Utah 1983). The value of the retirement benefits as found by the trial court is substantiated by the record, and we will not disturb it on appeal. *Id.* See Utah R.Civ.P. 52(a). Appellant tried her case on the basis that the value of the retirement benefits could be ascertained. She never suggested to the trial court that they were incapable of valuation at the time of trial, thereby requiring use of the deferred distribution method enunciated in *Woodward v. Woodward*, 656 P.2d 431 (Utah 1982). Although she may now prefer the *Woodward* approach, we will not address this issue for the first time on appeal. *See Utility Trailer Sales, Inc. v. Fake*, 740 P.2d 1327, 1329 (Utah 1987); *Insley Mfg. Corp. v. Draper Bank & Trust*, 717 P.2d 1341, 1347 (Utah 1986).

## CHILD SUPPORT

■ Appellant's final challenge on appeal is to the level of child support awarded. In her complaint, Mrs. Canning sought $200 per month per child, for a total monthly request of $400. The court considered the needs of the children, as well as the relative abilities of the parties to meet them, and ordered Mr. Canning to pay $175 per month per child, for a total monthly award of $350. The monthly $50 difference between what she requested and what she received can hardly be characterized as an abuse of discretion. We will not second-guess the award. *See Jorgensen v. Jorgensen*, 667 P.2d 22, 23 (Utah 1983).

The judgment of the court below is affirmed as to property distribution and child support. That portion of the judgment

awarding no alimony to appellant is reversed, and the matter is remanded to the trial court for additional findings of fact and possible modification of the judgment. Costs to appellant.

DAVIDSON and GREENWOOD, JJ., concur.